PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3752
_____

MARY BURTON,
Appellant
v.

TELEFLEX INCORPORATED; TELEFLEX MEDICAL
INCORPORATED; SPECIALIZED MEDICAL DEVICES,
LLC; EDWARD BOARINI; SEAN O'NEILL
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA
(D.C. Civil No. 5:09-cv-2684)
District Judge: Honorable Edmund V. Ludwig
_____

Argued September 20, 2012
_____

Before: AMBRO, GREENAWAY, JR., and O'MALLEY,[*] *Circuit Judges*.

(Opinion Filed: February 20, 2013)

Nina B. Shapiro, Esq. (Argued)
53 North Duke Street
Suite 201
Lancaster, PA 17602
       *Counsel for Appellant Mary Burton*

David S. Fryman, Esq. (Argued)
Alexandra Bak-Boychuk, Esq.
Ballard Spahr
1735 Market Street
51st Floor
Philadelphia, PA 19103
       *Counsel for Appellees Teleflex, Inc., Teleflex Medical
       Inc., Specialized Medical Devices LLC, Edward
       Boarini, Sean O'Neill*

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

_____

[*] Honorable Kathleen M. O'Malley, United States Court of Appeals for the Federal Circuit, sitting by designation.

Appellant Mary Burton ("Burton") alleges that her employer, Teleflex Inc. ("Teleflex"),[1] terminated her employment in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* Burton also alleges various state law discrimination, contract, and tort claims against Teleflex. Teleflex claims that it did not terminate Burton's employment, but that she in fact resigned her position. The United States District Court for the Eastern District of Pennsylvania granted summary judgment in favor of Teleflex on Burton's discrimination claims, finding that Burton had resigned, and that even if she had not, she could not demonstrate that Teleflex's purported justification for sending her the letter "accept[ing her] resignation" was pretextual. The District Court also granted summary judgment to Teleflex on all of Burton's state law claims. Because the record clearly demonstrates that a dispute of material fact exists as to whether Burton resigned or was terminated, we vacate the District Court's grant of summary judgment on Burton's discrimination claims and breach of contract claim. We affirm the grant of summary judgment on Burton's claims for breach of the covenant of good faith and fair dealing,

---

[1] Unless otherwise specified, our reference to Teleflex throughout the opinion is a collective reference to all five Defendants in this case, including Teleflex Inc., Teleflex Medical Inc., Specialized Medical Devices LLC (collectively, the "Corporate Defendants"), Edward Boarini, and Sean O'Neill.

3

wrongful interference with contractual relations, and defamation.

## I.  BACKGROUND

Burton was the founder of two companies that manufactured and distributed medical device parts. She founded HDJ during the 1960's and formed Specialized Medical Devices ("SMD") in 1993. Burton served as the companies' President, and her son Edward Burton ("Edward") was the General Manager and Vice President. By 2006, the companies grew to employ approximately 140 people and generated an annual revenue of $14 million. In 2007, Burton sold HDJ and SMD to Teleflex Inc. After acquiring the companies, Teleflex discontinued the HDJ division and incorporated SMD into the Teleflex Medical OEM business.

As part of the transaction, Burton and Edward each entered into a separate two-year long employment agreement with Teleflex. Burton's employment agreement (the "Employment Agreement" or "Agreement") provided that she could terminate her employment with Teleflex by providing written notice at least thirty days before her termination would become effective. This is the only provision regarding Burton's authority to terminate the Agreement. On the other hand, Teleflex could terminate Burton in one of two ways. First, it could fire Burton without cause by providing written notice at least thirty days before her termination would become effective. Second, Teleflex could fire Burton for cause, upon written notice.[2] Under the Employment

---

[2] The Employment Agreement defines "cause" as (1) the failure to perform an obligation under the agreement, after

4

Agreement, Burton would be entitled to severance if Teleflex terminated her without cause.

Burton, age sixty-seven at the time of the sale, became Vice President of New Business Development at SMD. Her duties included directing and supervising the sales department at SMD, overseeing the customer service of existing accounts, developing new business, and preparing price quotations for customers. Burton had performed these same duties at SMD prior to the sale to Teleflex.

From the fall of 2007 until the end of her employment with Teleflex, Burton was supervised by Edward Boarini ("Boarini"), Senior Vice President and General Manager of Teleflex Medical OEM. Burton and Boarini had a strained professional relationship, and communication between the two was infrequent.[3] As Vice President of New Business

notice and an opportunity to cure; (2) conduct that would hold the Company in disrepute or scandal; (3) failure to follow lawful directions of the Board; (4) breach of fiduciary duty to the Company; or (5) gross neglect of the employee's duties, or any act of theft or dishonesty.

[3] Burton traveled frequently as part of her job with Teleflex. Moreover, Boarini did not work in the same office as Burton. Both of these factors contributed to their infrequent interactions. Burton further claims that Boarini excluded her from business communication and sales meetings, and that he did not evaluate her performance or prepare a performance appraisal for her. Although Boarini claims that he had difficulty communicating with Burton and that she did not

Development, Burton supervised the sales department for SMD. However, in February or March 2008, Dave Faris ("Faris"), a male in his forties, was transferred from another Teleflex division to be the director of sales for SMD, and the sales team then began reporting to him instead of Burton. Boarini acknowledged that "sales leadership . . . was a duty [of Burton's] that was removed." (App. 504.) Boarini also told Faris "to work very closely with [Burton]" and to learn from her. (App. 738; *see also* App. 373-74, 505.)

The problems between Burton and Boarini came to a head on June 3, 2008. That day, the two attended a medical device trade show in Manhattan. Boarini stated that he intended to discuss with Burton her lack of communication and undefined performance objectives. At their depositions, both parties recounted their version of the conversation.

Burton testified about the encounter:

[A]nd I came up to Ed [Boarini] and I said, I asked him when he wanted to get together because he had talked to me on the phone the previous Friday and mentioned that he wanted to meet with me.

So when I got there I went to him and asked him when did he want to get together and he couldn't really even look me in the face. He said, Oh, well, he was going to be really busy,

_____

clearly define her performance objectives, it is undisputed that Boarini never informed Burton of any performance issues.

6

he had all these customers he had to see, he didn't have time that day, he didn't think he would have any time the next day, he was too busy, and then he talked about maybe I can give you ten minutes or so on Thursday, and I said, you know, I made all my appointments to be later because I thought you were very specific about wanting to get together with me, and he was just kind of treating me like I wasn't even there and he was treating me like a useless old woman and just like I wasn't there, and he couldn't come up with any answer. It was like what do you mean I want to see you.

I mean, he just was pretty much just trying to get rid of me. And I finally pressed it, I said, are you asking for me to resign? Do you want me to resign? That's what I said to him. Do you want me to resign?

He said, Oh, no, no, we want you here for a long time to come and he was like, Oh, no, no, that's not what I mean at all. We need you. We want you for a long time.

And I don't know if too much more happened right at that moment, but I started to walk away and shortly thereafter he said to me, he said, I think you should think about that.

(App. 137.)

Boarini's testimony was fairly consistent with Burton's account:

> I had gone there with every intention to try to have a dialogue with Mary Burton and determine what she wanted to do with the business because she had not had any progress on her performance objectives or any kind of dialogue. And within a few minutes of talking to her about setting up a time to have that conversation, she resigned. . . .
>
> She asked me if I wanted her to resign. I said, no. Wait. Let's talk through this. Let's have a dialogue. Let's understand what we can do because we knew — I felt the relationship with her was not working to the betterment of the business.
>
> And twice she said, do you want me to resign? And I said, no. The third time is when I said, maybe you should think about retiring. That's when she decided to resign.

(App. 185.)

Despite Boarini testifying that Burton resigned at the end of their conversation, he acknowledged that Burton never explicitly said that she was resigning. As Boarini recalled, the conversation ended when Burton disengaged and walked away. However, two other Teleflex employees at the trade show, Faris and Jack Fulton ("Fulton"), claimed that Burton informed them on June 3, 2008, that she had resigned when

8

she returned to the Teleflex booth after her conversation with Boarini. These two employees then told Boarini that Burton had resigned. Based on his conversation with Burton, and the accounts of Faris and Fulton, Boarini determined that Burton had resigned.

The next day, Wednesday, Burton met with Faris to discuss a work-related matter. Burton did not return to Teleflex's booth on Wednesday or Thursday, the latter of which she claimed was because she was upset about the conversation with Boarini. On Friday, Burton left on a one-week vacation that she had scheduled several weeks prior to the incident with Boarini's knowledge and approval.

It is unclear if Burton had any contact with the office while she was away on vacation.[4] On the day that she was scheduled to return to work, June 16, 2008, Burton received a letter from Sean O'Neill ("O'Neill"), Vice President of Global Human Relations for Teleflex Medical, stating that Teleflex was formally "accept[ing her] resignation." (App. 211.) Even though Burton was not entitled to severance in the event that she resigned, the letter stated that Burton would receive six months' severance if she extended the non-competition and non-solicitation clauses in her Employment

---

[4] Burton testified at her deposition that she could not recall if she called the office regarding work while she was away. However, in her Verified Statement, Burton claimed that she did call while she was away and that she was told her calls would not be patched through. Edward Burton's deposition testimony also discussed this happening.

Agreement. The severance was also conditioned on her releasing Teleflex from any liability relating to her employment. O'Neill later testified that he determined that Burton had resigned in reliance on Boarini's assessment and the statements from other employees that Burton had told them she resigned.

On June 16, 2008, the same day as O'Neill's letter to Burton, Teleflex sent a letter to its customers stating that Burton "decided to leave the company to pursue other opportunities." (App. 436.) Boarini emailed Teleflex employees the next day, June 17, 2008, to tell them that Burton had left the company "to pursue other opportunities." (App. 236.)

Burton claims that she was in disbelief when she received the letter from O'Neill, because she did not resign. Burton reached out to her lawyer, but at no point did she ever personally contest the letter or her termination with anyone at Teleflex. All of her communication with Teleflex was conducted through her lawyer, Michael Jarman. Additionally, Burton never attempted to return to work. Instead, through her attorney, Burton tried to negotiate the terms of her separation from Teleflex. Negotiations broke down, however, and no agreement was reached.

Burton's employee file at Teleflex reflects that she was removed from payroll on June 17, 2008. However, in the space on the form asking the reason for the change in status, in which "quit without notice," "retired," and "resigned" were all options, none of the corresponding boxes was checked. Instead, the form was filled out to state that she "[l]eft [the] co[mpany] to pursue other opportunities." (App. 433.) Teleflex does not dispute that Burton never explicitly said to

10

Boarini that she was resigning, nor does it dispute that she never submitted a letter of resignation, despite the requirement in her Employment Agreement that she do so.

Following the breakdown of the negotiations, Burton filed suit in the District Court for the Eastern District of Pennsylvania alleging several claims against Teleflex: (1) age discrimination under the ADEA; (2) gender discrimination under Title VII; (3) age and gender discrimination under the Pennsylvania Human Relations Act (PHRA), 43 Pa. Const. Stat. § 951 *et seq.*; (4) breach of contract; (5) breach of the covenant of good faith and fair dealing; (6) wrongful interference with contractual relations; and (7) defamation.[5] Teleflex moved for summary judgment. On September 29, 2011, the District Court granted summary judgment in favor of Teleflex on all of Burton's claims, in an order without memorandum opinion. The District Court issued its Memorandum Opinion on November 2, 2011. *Burton v. Teleflex*, No. 09-CV-2684, 2011 WL 5237709 (E.D. Pa. Nov. 2, 2011).

On October 6, 2011, Burton filed a timely notice of appeal from the District Court's Order granting Teleflex's motion for summary judgment.

---

[5] Burton brings her ADEA and Title VII claims against the Corporate Defendants only, her PHRA claim against all Defendants, her breach of contract and breach of the duty of good faith and fair dealing claims against only the Corporate Defendants, and her wrongful interference with contract and defamation claims against only Boarini and O'Neill.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment and apply the same standard that the District Court would apply. *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010). A grant of summary judgment is appropriate where the moving party has established "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[6] A fact is material if it might affect the outcome of the suit under the governing law. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006).

Where the defendant is the moving party, the burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements of her case. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scheidemantle*, 470 F.3d at 538. However, to prevail on a motion for summary judgment,

---

[6] Federal Rule of Civil Procedure 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word — genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note (2010 amend).

12

"the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III.  ANALYSIS

Burton argues that the District Court erred in granting summary judgment to Teleflex.  She claims that the District Court improperly made credibility determinations as to the evidence before it, did not consider all of Burton's evidence, and gave undue credit to Teleflex's version of the facts.  The central issue on appeal is the factual question of whether Burton resigned from Teleflex or whether she was terminated. Because we believe there is a genuine dispute as to this question and believe resolution of that dispute may be determinative of Burton's breach of contract and discrimination claims, we vacate the grant of summary judgment on those claims.

Burton has not demonstrated disputes of material fact as to her remaining state law claims.  As such, summary judgment was properly granted on her claims for breach of the duty of good faith and fair dealing, wrongful interference with contract, and defamation.

13

## A. Age and Gender Discrimination Claims

### 1. Legal Standards for Establishing Employment Discrimination

The ADEA and Title VII prohibit discrimination on the basis of age and sex, respectively.[7] Because Burton has not provided direct evidence of discrimination, our inquiry under both statutes is governed by the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (reaffirming the use of the *McDonnell Douglas* standard in ADEA cases involving indirect evidence); *Scheidemantle*, 470 F.3d at 538-39 (applying *McDonnell Douglas* standard to Title VII gender discrimination claim concerning indirect evidence).

Under the first step in the *McDonnell Douglas* analysis, the plaintiff bears the burden of making out a prima facie case of discrimination. *Scheidemantle*, 470 F.3d at 539. To establish a prima facie case of age discrimination under the ADEA, Burton must make a showing that: (1) she is forty years of age or older; (2) the defendant took an adverse employment action against her; (3) she was qualified for the

---

[7] The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, terms, conditions, or privileges of employment on the basis of their age. *See* 29 U.S.C. § 623(a)(1). Title VII likewise prohibits employers from discriminating against individuals on the basis of their race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(2).

position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus.  *Smith*, 589 F.3d at 689.

To make a showing of a prima facie case of gender discrimination under Title VII, Burton must show that:  (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) members of the opposite sex were treated more favorably.  *Hugh*, 418 F.3d at 267 (citing *McDonnell Douglas*, 411 U.S. at 802-03).  A plaintiff may also meet the last element by showing that the adverse employment action "occurred under circumstances that could give rise to an inference of intentional discrimination."  *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

To establish a prima facie case at summary judgment, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case." *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001) (alteration in original) (internal quotation marks omitted).  If a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the prima facie case, she has not met her initial burden, and summary judgment is properly granted for the defendant.  *See Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir. 1996).

Once the plaintiff makes out her prima facie case, "the burden of production [then] shifts to the defendant to offer a legitimate non-discriminatory [justification] for the adverse employment action."  *Smith*, 589 F.3d at 690; *see also Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 n.5 (3d Cir. 1998).  This burden is "'relatively light'" and is satisfied if the employer provides evidence, which, if true,

15

would permit a conclusion that it took the adverse employment action for a non-discriminatory reason. *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) (describing this step as a "minimal burden"). At this stage, "the defendant need not prove that the articulated reason actually motivated its conduct." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (internal quotation marks omitted).

The third step in the *McDonnell Douglas* analysis shifts the burden of production back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination. *Fuentes*, 32 F.3d at 764-65; *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 799-800 (3d Cir. 2003). The plaintiff must make this showing of pretext to defeat a motion for summary judgment. *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008) (explaining that, "to defeat a motion for summary judgment, [the plaintiff] must show that the employer's articulated reason was a pretext for intentional discrimination"). To make a showing of pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

The plaintiff's evidence, if it relates to the credibility of the employer's proffered justification, "must demonstrate such weaknesses, implausibilities, inconsistencies,

16

incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Fuentes*, 32 F.3d at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)). As we have explained, if a plaintiff has come forward with sufficient evidence to allow a finder of fact to discredit the employer's proffered justification, she need not present additional evidence of discrimination beyond her prima facie case to survive summary judgment. *See Fuentes*, 32 F.3d at 764; *Fasold v. Justice*, 409 F.3d 178, 185 (3d Cir. 2005). This is because the factfinder may infer from the combination of the prima facie case, and its own rejection of the employer's proffered reason, that the employer engaged in the adverse employment action for an invidious reason. *Fuentes*, 32 F.3d at 764; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."). The plaintiff is therefore not required to produce direct evidence of discriminatory intent to demonstrate pretext and survive a motion for summary judgment.

## 2. District Court Opinion on Discrimination Claims

The District Court first determined that, even in the light most favorable to Burton, the evidence weighed in favor of a finding that she had resigned, and had not been terminated. *Burton*, 2011 WL 5237709, at *3 n.7. Because a plaintiff must suffer an adverse employment action to state a prima facie case of employment or gender discrimination, the

District Court could have based its grant of summary judgment on its conclusion that Burton had suffered no adverse employment action. *See Duffy*, 265 F.3d at 171 (affirming the district court's grant of summary judgment because the plaintiff "did not produce evidence from which a reasonable jury could find an adverse employment action, which is a prerequisite to a successful age discrimination claim").

However, the District Court presumed, for purposes of summary judgment, that Burton had stated a prima facie case, and proceeded to conduct the *McDonnell Douglas* burden shifting analysis. It determined that Teleflex had proffered a legitimate non-discriminatory reason for sending Burton the resignation letter — namely, that Teleflex reasonably believed that Burton had resigned. *Burton*, 2011 WL 5237709, at \*3. Under this analysis, the burden then shifted to Burton to demonstrate that Teleflex's justification for sending her the letter was pretextual. The District Court determined that none of the evidence proffered by Burton "call[ed] into question Boarini's or O'Neill's belief that [she had] resigned," or created a "triable issue that discriminatory animus existed and was a moving factor behind Teleflex's [actions]." *Id.* at \*5. The District Court therefore granted summary judgment for Teleflex on Burton's age and gender discrimination claims.

As explained below, the District Court erred by finding that there was no dispute of fact as to whether Burton resigned or was terminated. Because the District Court's determination that Burton resigned improperly impacted its pretext analysis, we vacate the grant of summary judgment and remand for further proceedings.

18

### 3. *Dispute of Material Fact Relating to Burton's Separation from Teleflex*

Contrary to the District Court's determination, Burton has proffered evidence from which a factfinder could conclude that Teleflex terminated her. Burton maintains that she did not resign from Teleflex, and that she never told anyone that she had resigned. In fact, no Teleflex employee ever confirmed with Burton that she had actually resigned before Teleflex "accepted [her] resignation." (App. 211; *see also* App. 553-54, 797.) Instead of verifying whether Burton intended to resign, the company mailed her a letter on June 16, 2008, when she returned from her vacation, notifying her that it was accepting her resignation. The author of the letter, Sean O'Neill, said that he determined that Burton had resigned based on Boarini's assessment and the statements of other employees.

At his deposition, Boarini admitted that Burton never said that she was resigning. Moreover, Teleflex acknowledged that Burton never submitted a resignation letter or formally notified the company in any way that she was resigning despite the fact that Burton's employment agreement provided that she must provide written notice to the company at least 30 days before her resignation is to be effective. As we pointed out at oral argument, there is no evidence that Burton ever said she was resigning to anyone above her in the chain of command. Boarini also admitted that he did not contact Burton after the incident on June 3,

19

2008 to confirm that she resigned or to ask her for a letter of resignation.[8]

According to Boarini, Faris and Fulton told him on June 3, 2008, that Burton had told them that she resigned. The District Court credited the testimony of these employees in deciding that Burton had in fact resigned. However, the court did not credit the testimony of Burton herself, who denied having told anyone that she resigned. Nor did the District Court consider the conflicting testimony of Edward Burton, who spoke to Burton subsequent to her conversation with Boarini. They discussed Burton's conversation with Boarini, but Edward claimed that Burton said nothing about having resigned or having been fired. Edward testified that Burton continued to work after June 3, 2008, and that sometime before June 16, 2008, Burton called the office to send in quotes and was told by the receptionist that her call could not be put through. By crediting the testimony of the Teleflex employees and disregarding the Burtons' conflicting testimony, the District Court improperly made credibility determinations, which it may not do at summary judgment. *See Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011) (noting that at summary judgment "[t]he court may not . . . weigh the evidence or make credibility determinations because these tasks are left for the fact finder" (internal quotation marks omitted)).

---

[8] He also testified, however, that he had no cell phone number for Burton, and did not know how to reach her after the June 3, 2008 incident.

Several other pieces of evidence are relevant to the issue of whether Burton resigned or was terminated. First, in Burton's personnel file, on a form indicating that she was no longer to be paid by Teleflex, the boxes indicating that she either "quit without notice," "resigned," or "retired" were not checked. (App. 433, 466-67, 810.) Instead, the form was completed to say: "[l]eft co[mpany] to pursue other opportunities." (App. 433, 809.) At her deposition, Teleflex Human Resources Director Margie Heilig ("Heilig") conceded that she could not state from where she got that information because it involved a conversation with an attorney. Boarini testified that he had "no idea" why the form was filled out in that particular way.

Second, approximately one month prior to Burton's confrontation with Boarini at the trade show, Boarini and two other Teleflex employees were emailing about the departure of Edward Burton from Teleflex. At one point, the email chain shifts to discussing Burton. An official at Teleflex, Tim Kelleher ("Kelleher"), tells Boarini and another employee in an email: "I also talked to [Edward] about [Burton] and the lack of communication and sharing of information and our concerns about her after he leaves. He has agreed to facilitate a three way conversation between [Edward], [Burton] and me *to get her to play ball*." (App. 413 (emphasis added).) Kelleher, the drafter of the email, testified that his reference to getting Burton to play ball merely meant that he wanted Edward to discuss with Burton her lack of communication. While that is certainly a plausible explanation, it is equally plausible that a reasonable juror could perceive the comment as a reference to pushing Burton out of the company.

21

Third, the District Court also cited "plaintiff's conduct after receipt of the June 16, 2008 letter" as a reason for finding that Burton had resigned. *Burton*, 2011 WL 5237709, at *3 n.7. The District Court claimed that "plaintiff made no protest that the resignation had not occurred." *Id.* at *4. Boarini testified that he and others at Teleflex were surprised that they received no follow-up directly from Burton following her receipt of the June 16, 2008 letter. Burton also testified that she did not initiate any contact with Teleflex after receiving the letter, but that she did not do so because she considered herself to have been fired, and believed she "no longer had any rights." (App. 385.) Upon receipt of the June 16, 2008 letter, Burton contacted her attorney Michael Jarman, and from that point forward she only communicated with Teleflex "by and through [her] Attorney Jarman." (App. 323.) She further testified that she would not have contacted Teleflex on her own without first speaking to her attorney. The District Court thus did not consider that Burton communicated with Teleflex through her attorney following the June 16, 2008 letter, which undercuts its conclusion that she did not contest the resignation letter.

Burton also testified that, during a party that she held for her former employees shortly after her separation from Teleflex, she denied having resigned and clarified that she believed she had been fired. Furthermore, Teleflex notified its customers of Burton's departure on June 16, 2008, the same day it sent her the letter purporting to accept her resignation. This fact undercuts the District Court's reliance on Burton's conduct after receiving the June 16, 2008 letter. Once clients were notified of Burton's alleged resignation, she could reasonably have concluded that Teleflex had fired

22

her, leaving her no ability to contest her separation and return to her position.

Fourth, the District Court ignored evidence that Burton continued to perform work for Teleflex after her conversation with Boarini on June 3, 2008. On June 4, 2008, Burton met with Faris at the trade show to train him on quoting prices to customers. Faris acknowledged that he had a meeting with Burton at the trade show after her purported resignation, and that during the meeting Burton was talking about working together. Burton also testified that she had a previously scheduled vacation from June 9 to June 13, which could explain her absence from the office during this time period. Other evidence also indicates that, while she was on her vacation, Burton called in to the office to send in price quotes for customers, but that the receptionist would not put her through.[9]

At this stage of the litigation, there is sufficient evidence from which a reasonable juror could conclude that Burton was terminated. The District Court ignored the fact that Burton never tendered her resignation, Burton never told anyone to whom she reported at Teleflex that she was resigning, Teleflex relied on hearsay statements to conclude that Burton had resigned, and Teleflex never once asked Burton if she had resigned. While there is certainly evidence to suggest that Burton did resign, this evidence is refuted by Burton. The District Court therefore erred when it

---

[9] At her deposition, however, Burton testified that she could not remember whether she had called in to the office while she was on vacation.

determined that "[t]he evidence . . . weighs in favor of a finding that [Burton] resigned, even viewing the evidence in the light most favorable to [her]." *Burton*, 2011 WL 5237709, at *3 n.7.

### 4. McDonnell Douglas *Burden Shifting Analysis*

The District Court granted summary judgment for Teleflex because it held that Burton could not show that Teleflex's justification for sending her the resignation letter was pretextual. *Burton*, 2011 WL 5237709, at *4-5. Because the District Court's pretext analysis was unduly influenced by its error regarding Burton's resignation, we vacate the grant of summary judgment and remand for further proceedings.

To the extent the District Court's pretext analysis suggested that Burton was required to show evidence of discriminatory animus to demonstrate pretext, that suggestion is unsupported by our precedent. *See Fuentes*, 32 F.3d at 764. A plaintiff may demonstrate pretext at summary judgment in two different ways. First, the plaintiff may point to evidence in the record that would cause a reasonable juror to disbelieve the employer's articulated legitimate non-discriminatory reason, thereby creating a genuine dispute of material fact as to the credibility of that reason. *See id.* at 764 & n.7. If a plaintiff comes forward with evidence that would cause a reasonable factfinder to find the defendant's proffered reason "unworthy of credence," *Lichtenstein*, 691 F.3d at 310 (internal quotation marks omitted), she need not adduce any evidence of discrimination beyond her prima facie case to survive summary judgment, *Fuentes*, 32 F.3d at 764; *see also Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996) (en banc) ("[A] plaintiff may survive

24

summary judgment . . . if the plaintiff produced sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action."). Second, the plaintiff may also defeat summary judgment by pointing to evidence that indicates that the employer acted with discriminatory animus. *Fuentes*, 32 F.3d at 764.

As discussed above, we find that Burton's evidence created a genuine dispute of fact regarding the credibility of Teleflex's proffered reason for her discharge — i.e., that a reasonable fact finder could find the claim that Burton resigned to be "unworthy of credence." *Id.* at 765. In the face of such evidence, Burton did not need to present evidence of discriminatory animus and she should not have been required to do so.

We therefore vacate the grant of summary judgment on Burton's ADEA and Title VII claims and remand for further proceedings consistent with this opinion.

### B. Burton's Pennsylvania State Law Claims

The District Court also granted summary judgment to Teleflex on all of Burton's state law claims. For the following reasons, we vacate the grant of summary judgment on Burton's breach of contract and state law discrimination claims. We affirm the District Court's grant of summary judgment regarding Burton's remaining state law claims.

## 1. *Breach of Contract*

The District Court granted summary judgment to Teleflex on Burton's breach of contract claim because it concluded that "the evidence of record, viewed in the light most favorable to plaintiff, is that she resigned her position." *Burton*, 2011 WL 5237709, at \*5. Because a dispute of material fact exists as to whether Burton resigned or was terminated, summary judgment was inappropriately granted on her breach of contract claim.

Under Pennsylvania law, "[a] breach of contract action involves: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) damages." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa. Super. Ct. 2011). Burton bases her breach of contract claim on Teleflex's alleged violation of her Employment Agreement. The Agreement provides that Burton could be terminated in one of two ways: (1) with cause, or (2) without cause, after 30 days' notice. The Employment Agreement specifies that if Burton were to be terminated without cause, she would be entitled to a set amount of severance pay. Teleflex does not claim that Burton was terminated for cause, and Boarini admitted at his deposition that he never brought any performance issues to Burton's attention. The proposed separation agreement, sent to Burton on June 16, 2008, offered her a severance, but with the additional condition that she extend the non-compete provisions in her original Employment Agreement by one year.[10] She never reached an agreement with Teleflex on the

---

[10] Payment of the severance was also conditioned on Burton releasing the company from liability. However, it is unclear whether she would have been required to sign a release had

26

terms of her separation and has not received any severance pay.

The central fact material to Burton's breach of contract claim is whether she resigned or was terminated. If a factfinder were to find that Burton was terminated from Teleflex, he or she could also find that Teleflex breached the terms of the Employment Agreement. The grant of summary judgment is vacated.

### 2.     *Pennsylvania Human Relations Act*

Burton also brings age and gender discrimination claims against Teleflex under the PHRA, which prohibits discrimination in employment on the basis of age or sex. 43 Pa. Cons. Stat. §§ 953, 955. We have "stated 'that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently.'" *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 265 n.5 (3d Cir. 2006) (quoting *Fasold*, 409 F.3d at 184 n.8). The PHRA provisions here present no such issue, and therefore should be interpreted coextensively with Burton's ADEA and Title VII claims. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010) (noting that it is "proper to address ADEA and PHRA age discrimination claims collectively" (alteration and internal quotation marks omitted)); *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims."). Because we vacate the grant of summary judgment

the company terminated her pursuant to her original employment agreement.

27

on Burton's Title VII and ADEA claims, we also vacate the grant of summary judgment on Burton's PHRA claims.

### 3.      Breach of the Covenant of Good Faith and Fair Dealing

The District Court construed Burton's claim for breach of the covenant of good faith and fair dealing as claiming that, but for her separation from Teleflex in 2008, she would have continued to be employed by Teleflex beyond the two-year term contemplated by her Employment Agreement. *Burton*, 2011 WL 5237709, at *5. The District Court concluded that no evidence in the record supported this contention, and granted summary judgment. However, Burton argues that Teleflex breached the duty of good faith by terminating her employment in a manner contrary to the Employment Agreement, and by "contriv[ing] an illusory resignation to absolve them from their severance obligations under the Employment Agreement." (Br. of Appellant 26.) Regardless of how the claim is framed, summary judgment was properly granted because under Pennsylvania law, the implied covenant of good faith does not allow for a cause of action separate and distinct from a breach of contract claim.

Pennsylvania courts have defined the duty of good faith and fair dealing as "[h]onesty in fact in the conduct or transaction concerned," and have held that "[w]here a duty of good faith arises, it arises under the law of contracts, not under the law of torts." *Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1253 (Pa. Super. Ct. 2002) (internal quotation marks omitted). Moreover, under Pennsylvania law, a "claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim." *LSI Title Agency, Inc. v.*

28

*Evaluation Servs., Inc.*, 951 A.2d 384, 392 (Pa. Super. Ct. 2008). Therefore, while Pennsylvania law generally recognizes a duty of good faith in the performance of contracts, this duty "does not create independent substantive rights." *Commonwealth v. BASF Corp.*, No. 3127, 2001 WL 1807788, at \*12 (Pa. Commw. Ct. Mar. 15, 2001); *see also JHE, Inc. v. Se. Pa. Transp. Auth.*, No. 1790, 2002 WL 1018941, at \*5 (Pa. Commw. Ct. May 17, 2002) ("[T]he implied covenant of good faith does *not* allow for a claim separate and distinct from a breach of contract claim. Rather, a claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself." (emphasis in original)).

Any claim that Teleflex violated the duty of good faith and fair dealing in the performance of the Employment Agreement is therefore subsumed into Burton's breach of contract claim. Although the District Court did not utilize this analysis in granting summary judgment to Teleflex, "'[w]e may affirm the District Court on any grounds supported by the record.'" *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (alteration in original) (quoting *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc)). Because Burton cannot maintain an independent cause of action for the breach of the covenant of good faith and fair dealing under Pennsylvania law, we affirm the District Court's grant of summary judgment on this claim.

*4.      Wrongful Interference with Contractual Relations*

The District Court granted summary judgment for O'Neill and Boarini on Burton's claim for wrongful interference with contractual relations because she provided no evidence from which a factfinder could conclude that O'Neill and Boarini were acting as third parties to her Employment Agreement when they allegedly caused its breach. *Burton*, 2011 WL 5237709, at *5-6. The District Court was correct in this conclusion and its grant of summary judgment on this claim is affirmed.

Under Pennsylvania law, the elements of a claim for wrongful interference with contractual relations are: (1) the existence of a contractual relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm the contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) damages to the plaintiff as a result of the defendant's conduct. *See Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009). However, a plaintiff can only bring a claim for wrongful interference against a third party to the contract, not against a defendant who is also party to the contract. *See Nix v. Temple Univ. of Commw. Sys. of Higher Educ.*, 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991). Because a corporate agent acting within the scope of his employment acts on behalf of the corporation, he is not considered a third party to the contract. *Id.* Thus, under Pennsylvania law, where "a plaintiff has entered into a contract with a corporation, and that contract is terminated by a corporate agent who has acted within the scope of his or her authority, the corporation and its agent are considered one so

30

that there is no third party against whom a claim for contractual interference will lie." *Daniel Adams Assocs., Inc. v. Rimbach Publ'g, Inc.*, 519 A.2d 997, 1002 (Pa. Super. Ct. 1987); *see also Maier v. Maretti*, 671 A.2d 701, 707 (Pa. Super. Ct. 1995) ("Appellant, however, overlooked case law which holds a corporation acts only through its agents and officers, and such agents or officers cannot be regarded as third parties when they are acting in their official capacity.").

Burton has provided no evidence from which a trier of fact could conclude that either O'Neill or Boarini was acting outside the scope of his authority for Teleflex when each allegedly caused Teleflex to breach Burton's Employment Agreement. At her deposition, Burton was asked about what Boarini and O'Neill did to interfere with her Agreement. She responded that Boarini gave O'Neill the information that she allegedly resigned, and that O'Neill interfered by writing the June 16, 2008 letter. These allegations do not support an inference that either Boarini or O'Neill was acting outside the scope of his authority as a Teleflex employee. Although Burton argues that "[a] jury could find that Boarini and O'Neill acted individually to interfere with [her] employment contract with Teleflex," (Br. of Appellant 27), such conclusory allegations are insufficient to withstand a motion for summary judgment, *see Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) ("Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment.").

31

### 5.   *Defamation*

Burton brings a defamation claim against Boarini based on the notices that he sent to Teleflex customers and employees advising them that Burton had left the company "to pursue other opportunities." [11]   The District Court held that Burton could not maintain her claim against Boarini because the notices were not capable of defamatory meaning, nor could she show that she was damaged by any of these statements. *Burton*, 2011 WL 5237709, at *7.   On appeal, Burton argues that the District Court erred in holding that the June 16, 2008 notice to customers and the June 17, 2008 email to Teleflex employees were incapable of defamatory meaning. (Reply Br. of Appellant 14-15.)   The District Court was correct in granting summary judgment to Boarini on Burton's defamation claim.

Under 42 Pa. Cons. Stat. § 8343(a), a plaintiff is required to prove seven elements to make out a claim of defamation, including *inter alia*, proof of "[t]he defamatory character of the communication" and "[s]pecial harm resulting to the plaintiff from its publication."   Whether a communication is capable of defamatory meaning is a

---

[11] In her Complaint, Burton also brings a defamation claim against O'Neill arising from the June 16, 2008 resignation letter.  The District Court held that Burton could not maintain her defamation claim against O'Neill because the June 16, 2008 letter was sent only to her, and therefore was never published.  Burton does not contest this finding on appeal, and thus has waived her claim against O'Neill. *See Gorum v. Sessoms*, 561 F.3d 179, 185 n.3 (3d Cir. 2009) (noting that the failure to argue an issue waives it on appeal).

32

"threshold issue" to be determined by the court. *Kurowski v. Burroughs*, 994 A.2d 611, 617 (Pa. Super. Ct. 2010); *see also Blackwell v. Eskin*, 916 A.2d 1123, 1125 (Pa. Super. Ct. 2007) ("Whether the contested statements are capable of defamatory meaning is a question of law for the court."). The plaintiff bears the burden of making this showing and "[i]f the court determines that the challenged publication is not capable of defamatory meaning, there is no basis for the matter to proceed to trial." *Kurowski*, 994 A.2d at 617 (internal quotation marks omitted).

In considering whether a statement is capable of defamatory meaning, the court considers "whether the statement tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him." *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004) (internal quotation marks omitted). The statement must be examined in context to determine its likely effect on the reader, *id.*, and the Court should evaluate the effect it is likely to produce "in the minds of the average persons among whom it is intended to circulate," *Tucker v. Fischbein*, 237 F.3d 275, 282 (3d Cir. 2001) (internal quotation marks omitted). Furthermore, the statement must do more than merely annoy or embarrass the purported victim; "[s]he must have suffered the kind of harm which has grievously fractured h[er] standing in the community of respectable society." *Phila. Daily News*, 848 A.2d at 124 (internal quotation marks omitted).

Burton takes issue with the statement made to Teleflex customers and employees that she "decided to leave the company to pursue other opportunities." (App. 436; *see also* App. 236.) Although she claims that this statement caused

co-workers to become angry with her, and allegedly caused customers to disassociate from her, the statement says nothing negative, and on its own, is incapable of "grievously fractur[ing] [her] standing in the community of respectable society." *Phila. Daily News*, 848 A.2d at 124 (internal quotation marks omitted); *see also Maier*, 671 A.2d at 704-05 (collecting cases where far more egregious statements have been held to be incapable of defamatory meaning); *cf. Agriss v. Roadway Express, Inc.*, 483 A.2d 456, 462-63 (Pa. Super. Ct. 1984) (holding that statement that employee "opened company mail" was capable of defamatory meaning because it implied that he committed a crime); *Birl v. Phila. Elec. Co.*, 167 A.2d 472, 475-76 (Pa. 1960) (holding that statement by plaintiff's former employer to his current employer that plaintiff "quit without giving notice" was capable of defamatory meaning because "recipients of such communication could reasonably conclude that [plaintiff] lacked honor and integrity and was not a person to be relied upon insofar as his business dealings were concerned").

Unlike the statements in *Agriss* and *Birl*, a statement that Burton left the company "to pursue other opportunities" does not reflect negatively on her integrity, and would not cause the recipients of the communication to distrust her. Furthermore, "even if the statement . . . were false, that does not require a finding of defamatory character." *Kurowski*, 994 A.2d at 619. The District Court therefore did not err when it held that the statement that Burton left "the company to pursue other opportunities" is incapable of defamatory meaning.

In addition, Burton has not provided evidence that she was damaged by the allegedly defamatory communication, as

34

required by 42 Pa. Cons. Stat. § 8343(a). As the District Court noted, Burton held a party for Teleflex employees at her home after her separation from Teleflex, and she testified that at this point, the employees "[t]hought very highly" of her, and did not believe that she had actually resigned. (App. 146.) She also testified that after her separation from Teleflex she received two job offers from companies in the industry, one in Lancaster and one in Oregon, and claimed that they "would have taken [her] any time [she] was free." (App. 157.) These facts cut against a finding that Burton was damaged by the statements, and Burton has not put forth any evidence to the contrary.

We affirm the District Court's grant of summary judgment on Burton's defamation claim.

### C.     Motion to Supplement the Record on Appeal

Burton has filed a Motion to Supplement the Record and Appendix to include an affidavit from her attorney, Michael Jarman, and an email exchange between Jarman and James Leyden, attorney for Teleflex. (App. 954-57.) These documents were not provided to the District Court. Although it is the function of the appellate court to review the decision below on the basis of the record that was presented to the district court, a court of appeals may allow a party to supplement the record on appeal in "exceptional circumstances." *Acumed LLC*, 561 F.3d at 226. In determining whether exceptional circumstances exist, the court may consider:

> (1) whether the proffered addition would
> establish beyond any doubt the proper

35

resolution of the pending issue; (2) whether remanding the case to the district court for consideration of the additional material would be contrary to the interests of justice and the efficient use of judicial resources; and (3) whether the appeal arose in the context of a habeas corpus action.

*Id.* (quoting *In re Capital Cities/ABC Inc's Appl. for Access to Sealed Trs.*, 913 F.2d 89, 97 (3d Cir. 1990)). Burton argues that supplementing the record is necessary because Jarman's affidavit and the accompanying email correct errors of fact committed by the District Court. She claims that the documents demonstrate that Burton communicated with Teleflex after June 16, 2008 by and through Jarman (therefore refuting the District Court's claim that she had no communication with Teleflex after June 16, 2008), and demonstrate that Jarman did in fact contest whether Burton resigned. (Appellant's Mem. 3-4.) However, Burton could have produced this information in the first instance to the District Court in opposition to Teleflex's motion for summary judgment. She nowhere claims that this information was not in her possession. *See Acumed LLC*, 561 F.3d at 226 n.26 ("[A] party should present everything it needs for a complete presentation on the motion [to the District Court] and, if necessary, seek additional time under Fed. R. Civ. P. 56(f) to marshal its evidence.").

Burton claims that exceptional circumstances exist because she was unable to file a Motion for Reconsideration

36

under Rule 59(e),[12] but she fails to explain why she did not include these documents in her original submissions to the District Court. *See Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 477-78 (6th Cir. 2008) (denying motion to supplement record on appeal because "[p]ermitting [appellant] to supplement the record on appeal with information that she could have easily obtained much earlier would not advance the interests of justice and would not further efficient use of judicial resources").

In addition, these materials add little to the record. The record presented to the District Court contains sufficient evidence to create a genuine dispute of material fact as to whether Burton resigned or was terminated. Therefore, Burton's Motion to Supplement is denied.

## IV.   CONCLUSION

For the foregoing reasons, we vacate the District Court's grant of summary judgment on Burton's discrimination claims brought under the ADEA, Title VII, and the PHRA, and vacate the grant of summary judgment on Burton's claim for breach of contract. We affirm the grant of summary judgment on the remainder of Burton's state law

---

[12] The District Court granted Teleflex's motion for summary judgment in an order without memorandum opinion on September 29, 2011, and issued its memorandum opinion on November 2, 2011. In the interim, Burton filed a notice of appeal. Because of the District Court's delay in issuing its opinion, Burton claims that she was unable to file a motion for reconsideration under Federal Rule of Civil Procedure 59(e).

claims, and deny Burton's Motion to Supplement the Record. The case is remanded for proceedings consistent with this Opinion.