**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3917
_____

VINCENT EVANOSKI,
Appellant

v.

UNITED PARCEL SERVICE, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 2-12-cv-00211)
District Judge:  Honorable Mark R. Hornak
_____

Submitted Under Third Circuit LAR 34.1(a)
June 10, 2014
_____

Before: AMBRO, GREENBERG and BARRY, Circuit Judges

(Opinion Filed: July 2, 2014 )
_____

OPINION
_____

BARRY, Circuit Judge

Vincent Evanoski appeals an order of the District Court granting summary

judgment in favor of his former employer, United Parcel Service, Inc. ("UPS"), on his

claims for unlawful discrimination under the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. §§ 621, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951, et seq. We will affirm.

## I.

Evanoski worked as a Package Car Driver for UPS for over twenty years before being terminated, in May 2011, when he was forty-nine years old. Prior to his termination, Evanoski had been the subject of numerous instances of disciplinary action by UPS for various infractions including failure to follow company rules, vehicle accidents, and failure to deliver packages in a timely fashion. Because we write primarily for the parties, and because the District Court's decision contains a detailed description of Evanoski's disciplinary history at UPS, we need not recite it in full here.

Before terminating Evanoski in May 2011, UPS had tried to do so four other times, in September 2002, April 2009, May 2009, and July 2010, but each time Evanoski challenged the disciplinary action through the grievance process contemplated by the labor agreement between UPS and his union. In each case, the discipline was reduced to a lesser penalty, and he continued to be employed by UPS pursuant to a series of "Last Chance" agreements.

In January 2011, Evanoski was involved in an accident in which he backed his UPS delivery truck into a customer's awning, damaging it. When his managers came to the scene of the accident, they spoke with him about the need to engage the parking brake; the next day, however, they observed him again failing to do just that. As a result, he received a discharge notice on February 4, 2011. Pursuant to the labor agreement,

2

however, he continued to work while his challenge to the discharge was pending. During that period of time, his supervisors observed his driving behavior on two occasions and noted several safety concerns and "At Risk Behaviors," including failure to wear a seatbelt, failure to secure the on-board computer device, and failure to engage the parking brake. These observations led to a second discharge notice dated March 15, 2011. Evanoski challenged both discharge notices through the grievance process, and on May 10, 2011, his termination was unanimously upheld at a hearing before the UPS Western Pennsylvania Joint Council 40 Grievance Committee, which was made up of equal numbers of UPS representatives and union representatives.[1]

After Evanoski left UPS, his delivery route was taken over by an individual who was approximately forty years old. The route was assigned pursuant to methodology described in the labor agreement, which permitted Package Car Drivers to bid on routes according to their seniority.

On February 22, 2012, Evanoski filed this action against UPS alleging violation of the ADEA and PHRA. UPS moved for summary judgment, and, on August 30, 2013, the District Court granted its motion. The Court concluded that while it was a "very close call," Evanoski adequately stated a prima facie claim of age discrimination. (Dist. Ct. Op. at 13.) The Court held, however, that his claim failed because he set forth

---

[1] Evanoski received another discharge notice in April 2011 after he was involved in an accident in which his delivery truck's mirror was damaged. He claims that, following the April 2011 incident, his supervisor wrongly accused him of having collided with a school bus based on an observation of yellow paint (of unknown origin) on the back of the delivery truck. It is undisputed, however, that his ultimate termination was based only on the February and March discharge notices, and not on the April notice.

3

insufficient evidence that UPS's legitimate, nondiscriminatory reasons for his discharge constituted a pretext for discrimination, and observed that he "unqualifiedly admit[ted]" to many of the instances of misconduct and, as to others, disputed only the level of punishment. (Id. at 17.) The Court also held that his theories that UPS set him up to fail by assigning him a difficult route and that he was "set up" by UPS in connection with the April 2011 yellow paint incident were unsupported by the evidence of record.

Evanoski now appeals, arguing that the District Court erred by failing to consider the evidence in the light most favorable to him and in concluding that there was insufficient evidence to support a finding of pretext.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, and we have jurisdiction pursuant to 28 U.S.C. § 1291. "We exercise plenary review over the District Court's grant of summary judgment," and view the facts "in the light most favorable to the party against whom summary judgment was entered." Detz v. Greiner Indus., Inc., 346 F.3d 109, 115 (3d Cir. 2003). Summary judgment is appropriate where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Where an employee provides no direct evidence of discrimination, we apply the familiar three-step McDonnell Douglas analysis to the employee's claim under the

ADEA or PHRA.[2] Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005); see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas analysis, the employee must first establish a prima facie case of discrimination. Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009). "[O]nce the employee establishes a prima facie case, the burden of production (i.e., of going forward) shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision." Id. We have held that this burden is "'relatively light' and is satisfied if the employer provides evidence which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." Burton v. Teleflex, Inc., 707 F.3d 417, 426 (3d Cir. 2013) (quoting Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006)). If the employer makes this showing, "the burden of production shifts once again to the employee to establish that the employer's proffered justification for the adverse action is pretextual." Smith, 589 F.3d at 691. To make a showing of pretext sufficient to defeat summary judgment, the employee "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely that not a motivating or determinative cause of the

---

[2] As the District Court properly recognized, "the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." Fasold v. Justice, 409 F.3d 178, 184 n.8 (3d Cir. 2005) (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002)). Here, there being nothing specifically different in the language of the PHRA, we, as did the District Court, "will interpret the implicated provisions of the ADEA and PHRA as applying identically in this case and as being governed by the same set of decisional law." Id.

employer's action." Burton, 707 F.3d at 427 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).[3] To establish a prima facie case of age discrimination under the ADEA, the employee must show that (1) he is forty years of age or older; (2) the employer took an adverse action against him; (3) he was qualified for the position at issue; and (4) he was ultimately replaced by another employee "who was sufficiently younger to support an inference of discriminatory animus." Burton, 707 F.3d at 426. To prevail on an ADEA claim, the employee must "establish that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009).

The parties do not dispute the District Court's finding that Evanoski set forth a prima facie case of age discrimination, nor does Evanoski dispute that UPS proffered legitimate, nondiscriminatory reasons for his termination. He argues, however, that he did make a showing of pretext sufficient to survive summary judgment. We disagree. He does not dispute the factual bases for the numerous incidents over the course of his employment with UPS that culminated in disciplinary action; he merely argues, as he did in the District Court, that there were mitigating circumstances in connection with each incident that should have been taken into account. Even considering all of the

---

[3] The PHRA likewise provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer because of the . . . age . . . of any individual . . . to discharge from employment such individual . . . if the individual . . . is the best able and most competent to perform the services required." 43 Pa. Cons. Stat. § 955(a).

circumstances cited by Evanoski with respect to these incidents, we have no difficulty concluding that they fail to demonstrate pretext.

We are also in agreement with the District Court that there was a lack of evidence in the record to support Evanoski's theory that UPS set him up to fail by assigning him to a difficult route. Other than one anecdotal comment from a fellow driver regarding the difficulty of this route, there is no evidence to establish whether or how it constituted "the most difficult route available" or "one of the most difficult routes in the region," as Evanoski contends (see Appellant's Br. at 12, 19), and no evidence as to how often he was required to drive the route. Finally, the April 2011 "yellow paint" incident does not support a finding of pretext. Not only did the April 2011 accident not factor into UPS's decision to terminate him, there is no evidence, and only his speculation, to support his theory that UPS fabricated allegations against him.

There being a lack of evidence that Evanoski's age was a "but-for" cause of his termination, see Gross, 557 U.S. at 177, or that UPS's proffered reasons for his termination were pretextual, the District Court properly granted summary judgment in favor of UPS. We will affirm.