**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-2201

_____

LAVOTTE SAUNDERS,

Appellant

v.

APOTHAKER & ASSOCIATES, INC.; DAVID APOTHAKER

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-10-cv-03170)
District Judge: Honorable Joseph E. Irenas

_____

Argued November 19, 2013

Before: AMBRO, and SMITH, <u>Circuit Judges</u>
and O'CONNOR,[*] <u>Associate Justice</u> (Ret.)

(Opinion filed:  February 4, 2014)

Christine E. Burke, Esquire (Argued)
Ari R. Karpf, Esquire
Karpf, Karpf & Cerutti
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020

      Counsel for Appellant
Claude I. Schoenberg, Esquire (Argued)

---

[*] Honorable Sandra Day O'Connor, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

363 Bala Avenue
Bala Cynwyd, PA 19004

Kimberly F. Scian, Esquire
Apothaker & Associates
520 Fellowship Road, Suite C306
Mount Laurel, NJ 08054

       Counsel for Appellees

―――――――――

OPINION

―――――――――

PER CURIAM

       Lavotte Saunders brought suit against Apothakar & Associates, Inc. and David

Apothaker, claiming that they discriminated against him on the basis of his religion in

terminating him from a debt collector job. The District Court granted the defendants'

motion for summary judgment, concluding, among other things, that Saunders failed to

show that the defendants' stated reason for terminating him—his prior conviction and

failure to pay off restitution—was a pretext for discrimination. We agree and will affirm.

I

       In 2005, Lavotte Saunders was convicted of felony retail theft in Pennsylvania

state court after taking $18,000 worth of merchandise from a jewelry store. He was

sentenced to three years of probation and ordered to pay $12,000 in restitution.

       In 2010, Saunders applied for a debt collector job at Apothakar & Associates, Inc.,

a law firm owned by David Apothaker. The application Saunders signed and submitted

was titled "Application for Employment and Background Check Authorization." App.

2

289.  It stated:  "I . . . authorize [the law firm] to conduct a comprehensive review of my background related to this application for employment, and I understand that the scope of this investigation may include . . . a criminal record report/investigation."  *Id.* at 290.  The application also stated:  "I understand that if I am hired by [the law firm], . . . this authorization continues during the course of my employment."  *Id.*  And the application advised that "[e]mployment is contingent upon satisfactory completion of employment and reference checks."  *Id.*

Saunders was selected to interview for the debt collector job.  He had two interviews: one with two employees from the law firm's collections department and one with Lynn Anderson-Downs, the law firm's human resources director.  Saunders, who is Muslim, wore a keffiyeh and thobe to both interviews.  A keffiyeh is a traditional Muslim garment that covers the head, and a thobe is a traditional Muslim garment that covers the body.

The law firm offered Saunders the debt collector job.  The offer letter advised that the law firm "will conduct a background check when you are hired and you understand that this is a condition of employment."  *Id.* at 270.  Anderson-Downs and Apothaker testified in their depositions that Anderson-Downs told Apothaker that Saunders wore traditional Muslim garments before Apothaker made the final hiring decision.  Saunders was the first person hired by the law firm to wear a keffiyeh and thobe.

Saunders reported for his first day of work on May 19, 2010.  The following afternoon, Anderson-Downs advised Saunders that the results of his background check had come in and required the law firm to terminate him.  Between those two events,

3

Saunders met Apothaker for the first time.[1]  Saunders testified in his deposition that Apothaker seemed taken aback by Saunders' appearance and asked if he was new.

The law firm did not run background checks on every potential hire.  It also did not have a firm policy on what prior convictions precluded employment.  Instead, the law firm reviewed potential hires' backgrounds on a case-by-case basis to determine whether a specific prior conviction precluded employment.  Saunders' background check revealed his prior conviction.  Apothaker testified in his deposition that he did some additional checking and learned that Saunders had failed to pay off his court-ordered restitution.  Anderson-Downs, Apothaker, and David Aglira, the law firm's collections department director, testified in their depositions that they then discussed Saunders' prior conviction and failure to pay off restitution and decided to terminate him.

Following his termination, Saunders learned that the law firm hired three other employees with prior convictions.  The law firm hired Darron Wilson despite his convictions for theft of utilities, receipt of stolen property, and a drug-related offense.  The latter two convictions did not appear on the background check run by the law firm.  The law firm hired Oronde West despite his conviction for a drug-related offense.  And the law firm hired Latoya Dickerson despite her convictions for driving with a suspended license, receipt of stolen property, and theft by unlawful taking.  As with Wilson, Dickerson's latter two convictions did not appear on the background check run by the law firm.

---

[1] Throughout this litigation, the parties have taken different positions on whether Saunders first met Apothaker on May 19, the first day of Saunders' employment, or May 20, the second day of Saunders' employment.  Whether Saunders and Apothaker first met on May 19 or May 20 does not affect our analysis.

4

Saunders brought suit against the law firm and Apothaker, claiming that they terminated him on the basis of his religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, and the New Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann. § 10:5–1 *et seq*.[2] The District Court granted the defendants' motion for summary judgment. It reasoned that Saunders did not establish a prima facie case of discrimination because he failed to show that he was qualified for the debt collector position in light of his prior conviction and failure to pay off restitution. The District Court also reasoned that, even if Saunders had established a prima facie case of discrimination, he did not show that the defendants' stated reason for terminating him—his prior conviction and failure to pay off restitution—was a pretext for discrimination.

II

On appeal, Saunders contends that the District Court erred in granting the defendants' motion for summary judgment on his religious discrimination claims. The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and we have appellate jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 424-25 (3d Cir. 2013).

Because Saunders has provided no direct evidence of religious discrimination, we use the familiar *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework to evaluate his Title VII and NJLAD claims. *See Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007) (applying *McDonnell Douglas*

---

[2] Earlier in this litigation, Saunders also claimed that the defendants terminated him on the basis of his race, in violation of 42 U.S.C. § 1981, Title VII, and the NJLAD. Saunders has since abandoned those claims, and they are not before us.

framework to NJLAD claim).  Under the first step of the *McDonnell Douglas* analysis, a plaintiff bears the burden of establishing a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  If the plaintiff satisfies that burden, the burden shifts to the employer at the second step "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  *Id.*  And if the employer satisfies that burden, we move to the final step of the *McDonnell Douglas* analysis where the plaintiff bears the burden of showing that "[the employer's] stated reason . . . was in fact pretext."  *Id.* at 804.

Even assuming for the sake of argument that Saunders established a prima facie case of discrimination at the first step of the *McDonnell Douglas* analysis, his religious discrimination claims do not survive summary judgment.  At the second step of the *McDonnell Douglas* analysis, the defendants have offered a legitimate, nondiscriminatory reason for the adverse employment action—Saunders' prior conviction and failure to pay off restitution.  The burden thus shifts back to Saunders to show that the defendants' stated reason was a pretext for discrimination.

To show that an employer's stated reason was a pretext for discrimination, a plaintiff "generally must submit evidence which: 1) casts sufficient doubt upon [the stated reason] so that a factfinder could reasonably conclude that [it] was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."  *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994).  When a plaintiff relies on the former mode of showing pretext, he "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's [stated reason] that a reasonable factfinder *could*

6

rationally find [it] unworthy of credence, and hence infer that the employer did not act for [the stated reason]." *Id.* at 765 (internal quotation marks and citations omitted).

Saunders contends that the defendants' stated reason for his termination is a fabrication. He relies on two lines of argument to discredit it. First, Saunders argues that the defendants' stated reason is false because it shifted with time. He points to: 1) his termination letter and the defendants' answer to his second amended complaint, which indicate that the termination was based on an "unfavorable background check," App. 251, 271; 2) the defendants' answer to his first amended complaint, which indicates that the termination was based on a "felony conviction," *id.* at 233; 3) Apothaker's and Aglira's testimony, which indicates that the termination was based on a "crime of dishonesty," *id.* at 95, 198; and 4) Apothaker's testimony and the defendants' response to an interrogatory, which indicate that the termination was based in part on a "failure to make restitution," *id.* at 110, 258. We have previously explained that "[i]f a plaintiff demonstrates that the reasons given for her termination did not remain consistent, beginning at the time they were proffered and continuing throughout the proceedings, this may be viewed as evidence tending to show pretext, though of course it should be considered in light of the entire record." *Abramson v. William Paterson Coll.*, 260 F.3d 265, 284 (3d Cir. 2001). But here, the defendants' stated reason has remained consistent; it has just been stated at different levels of generality. That reason is an unfavorable background check consisting of a felony conviction for a crime of dishonesty and a failure to pay off restitution.

7

Second, Saunders argues that the defendants' stated reason is false because the defendants hired other employees who had prior convictions but did not wear traditional Muslim garments. He points to: 1) Wilson and his convictions for theft of utilities, receipt of stolen property, and a drug-related offense; 2) West and his conviction for a drug-related offense; and 3) Dickerson and her convictions for driving with a suspended license, receipt of stolen property, and theft by unlawful taking. There is no evidence, however, that the defendants knew about Wilson's receipt of stolen property and drug-related convictions or Dickerson's receipt of stolen property and theft by unlawful taking convictions when Wilson and Dickerson were hired.

That leaves Wilson's theft of utilities conviction, West's drug-related conviction, and Dickerson's driving with a suspended license conviction. Wilson's theft of utilities conviction is different in magnitude from Saunders' retail theft conviction. Wilson's conviction was a misdemeanor, and Apothaker testified in his deposition that he understood it to be for not paying an electricity bill. West's drug-related conviction and Dickerson's driving with a suspended license conviction are different in kind from Saunders' retail theft conviction. The parties agree that debt collectors have access to debtors' sensitive personal and financial information, including social security numbers, bank account numbers, and credit card numbers. That information can be used to steal funds from debtors' bank accounts and to charge their credit cards without authorization. We thus find it reasonable to conclude that a drug-related conviction and a driving with a suspended license conviction do not pose the same risk for hiring someone as a debt collector as does a retail theft conviction. Moreover, to the defendants' knowledge,

8

Wilson, West, and Dickerson did not defy a court order to make restitution. In sum, Saunders has not cast sufficient doubt upon the defendants' stated reason for his termination for us to reasonably conclude that it was a fabrication.

\* \* \* \* \*

We will affirm the judgment of the District Court.