**NOT PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 17-3236

ROGER KNIGHT,
            Appellant

v.

SLIPPERY ROCK UNIVERSITY, a unit of the
STATE SYSTEM OF HIGHER EDUCATION

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No.: 2:15-cv-01520)
District Judge: Honorable Cathy Bissoon

Submitted under Third Circuit L.A.R. 34.1(a)
on July 13, 2018

(Opinion filed: November 28, 2018)

Before: SHWARTZ, ROTH, and RENDELL, *Circuit Judges*

## O P I N I O N[*]

**RENDELL**, *Circuit Judge*:

Roger Knight appeals from the District Court's entry of summary judgment in favor of Slippery Rock University and denial of his motion for summary judgment on his discrimination claim. He contends that the University retaliated against him for engaging in protected activity when, after separate federal discrimination claims were filed against the University, he accessed multiple employees' personal computer files. The District Court held that he was not engaged in a protected activity and that, because he failed to demonstrate that the University's legitimate basis for termination—violation of the computer access policy—was pretextual under the *McDonnell Douglas* test, this claim could not succeed. We will affirm.

## I. BACKGROUND

### A. Facts

Roger Knight was employed by Slippery Rock University ("the University") from 1997 until his termination in March 2014. Knight held various positions within the University's police department before becoming Parking Manager in 2012.

In late 2011, two employees of the Slippery Rock Police Department, Caitlin Corrigan and Koah Pentz, filed EEOC Charges of Discrimination against the University, alleging that Knight discriminated and retaliated against them. Corrigan alleged

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

discrimination on the basis of her sex, while Pentz alleged discrimination on the basis of his Native American heritage and religious beliefs. Both filed complaints in federal court. In January 2013, the University's internal legal counsel sent Knight letters instructing him to preserve and maintain all information he had in his possession, custody, or control relating to the Corrigan and Pentz lawsuits. Knight received letters again in December 2013 reminding him of his ongoing obligations regarding the litigation holds.

Between June 2012 and January 2014, he accessed a number of individual computer files belonging to Officers Corrigan, Pentz, Frank Davis, and Assistant Chief of Police Windy Stafford. These individual files, saved on the University's server, are only accessible to administrators. Knight's account had administrator rights and permissions. Knight stated that he accessed these files because he was "told to provide information that would help [the University] win this case." A. 325. He further claimed that he accessed the files of Officer Davis and Assistant Chief Stafford for the purpose of looking for documents to bolster the University's defense. He believed that he "was going to be [the University's] best witness as to defending [the Corrigan lawsuit.]" A. 327 (second alteration in original).

In October 2013, Knight showed his supervisor, Chief Simmons, a document prepared by Corrigan addressed to Simmons regarding Knight's alleged harassment. When Simmons was unsuccessful in determining how Knight had accessed the file, the University retained Bit-x-Bit, a third-party forensics expert, to investigate how Knight gained access. In January 2014, while the investigation was ongoing, Knight was

3

suspended with pay. The next month, Bit-x-Bit issued a report detailing which files Knight had accessed and when, when his permissions were created, and recommending limiting Knight's access and creating an administrator rights policy. Several days later, at the request of the University, Bit-x-Bit issued a second report that did not contain the recommendations regarding Knight. The report noted that Knight accessed documents including texts of emails Corrigan sent to her attorney and to Chief Simmons, and a document with a file name "Attorney," appearing to contain communication between Corrigan and her attorney.

In February 2014, the University held two pre-disciplinary conferences. At the first conference, the University asked Knight to turn over all the documents he had accessed. Knight refused, but turned over some documents after the conference. At the second pre-disciplinary conference Knight provided additional documents. Knight was terminated on March 6, 2014.

In its termination letter, the University identified several reasons for Knight's discharge. First, the University said that Knight violated its computer-use policy[1] "by failing to act responsibly, use good judgment and exercise civility, and understand the appropriate use of assigned IT resources." A. 461. In addition, Knight's "unauthorized access of folders for other Officers was . . . for [his] own personal gain." *Id.* Moreover,

---

[1] The University's Acceptable Use Policy states that "[u]sers are expected to act responsibly." A. 514. It prohibits "[u]nauthorized use of another user's account" and "[a]ttempting to gain or gaining unauthorized access to . . . the files of another user." A. 516. It also prohibits "[u]tilizing university IT resources for purposes other than . . . university employment activities or university communications" and states that "IT resources cannot be used for personal or financial gain." A. 517.

Knight had to take affirmative steps and separately log in using his administrator access to view the information that he did. Lastly, Knight did not fully cooperate with the investigation, as he did not turn over all information and documents in his possession.

**B. Procedural History**

A few months after he was fired, Knight filed a charge against the University with the Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed Knight's charge.

Knight filed his present lawsuit in the United States District Court for the Western District of Pennsylvania on November 19, 2015, alleging that he was terminated in retaliation for his participation in the investigation into the complaints by Officers Corrigan and Pentz, in violation of the Civil Rights Act of 1964.

After discovery, Knight and the University each filed motions for summary judgment. The District Court issued an order granting the University's motion for summary judgment and denying Knight's motion for summary judgment.

The District Court analyzed the parties' submissions using the three-step *McDonnell Douglas* burden-shifting approach. This three-part test requires (1) the plaintiff to state a prima facie case of discrimination or retaliation; (2) the burden then shifts to the employer to advance a legitimate, non-discriminatory reason for the adverse employment action; and (3) the plaintiff is afforded an opportunity to show that the employer's proffered reason is pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). The District Court granted the University's motion under step one of the test, because it found that Knight had not engaged in a protected activity, and thus

5

failed to state a prima facie case of discrimination or retaliation. The Court noted that our precedent requires an employee participating in a proceeding against an employer's activity to hold an objectively reasonable good-faith belief that the activity he opposes is unlawful under Title VII in order to be afforded protection. Given that Knight did not oppose the discrimination, nor contend that he or the University did anything wrong, the District Court held Knight could not have had a good faith belief that the underlying employer conduct was unlawful.

While the Court granted the University's summary judgment motion under step one, it nonetheless addressed steps two and three. The District Court found that under step two, the University had offered a legitimate, non-retaliatory reason for terminating Knight. Specifically, the Court found that the University consistently pointed to Knight's violation of the computer-use policy as the reason for terminating Knight, and that this was a legitimate basis for terminating him. Moreover, under the third step of *McDonnell Douglas*, the District Court held that Knight had failed to demonstrate that the University's legitimate reason was merely a pretext for discrimination.

This appeal followed.

## II. DISCUSSION

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment. *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 146 (3d Cir. 1993). We apply the same standard as the District Court did. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 602–03 (3d Cir. 2002). Summary judgment is

6

appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Title VII of the Civil Rights Act of 1964 prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Applying the *McDonnell Douglas* burden-shifting approach, the District Court determined that Knight did not state a prima facie claim of retaliation, and that even if he had, he failed to demonstrate that the University's legitimate, non-discriminatory reason for terminating his employment was pretextual. We see no reason to disturb the District Court's well-reasoned ruling. Although the District Court thoughtfully analyzed each step of the *McDonnell Douglas* framework, we will affirm on a narrower basis.

Even if we assume Knight had engaged in protected activity, Knight has failed to show that the University's proffered legitimate and non-discriminatory reasons for his discharge were pretextual. To preclude summary judgment at this third stage, a "plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2)

7

believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The employee "must show[] not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit All. Inc.* 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc).

Knight does not meet this burden. Under the first prong, Knight argues that the University's termination letter contained numerous inaccuracies and was inconsistent with related testimony. In particular, he avers that the University stated that he had to separately log in to access the files, but Lynne Motyl, who wrote the letter, later testified in unemployment compensation proceedings that this was not true. In addition, Knight contends that in contrast to the letter's statement that he accessed the files "for personal gain," Motyl later admitted she was unaware of any personal gain Knight received. Lastly, Knight argues that he had access to the files by virtue of his administrative role, and thus it is unclear whether he violated the University's policies.

These inconsistencies are immaterial and do not approach a showing that the University's reason for his discharge "was so plainly wrong that it cannot have been the employer's real reason." *Keller*, 130 F.3d at 1109. "The plaintiff's evidence, if it relates to the credibility of the employer's proffered justification, 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them *unworthy of credence*.'" *Burton v. Teleflex Inc.*, 707 F.3d 417, 427

8

(3d Cir. 2013) (quoting *Fuentes*, 32 F.3d at 765) (emphasis added and internal quotation marks omitted).  Knight has not made such a demonstration.

For instance, although Motyl testified that she was unaware of any improper *financial* gain resulting from Knight's access to the files, she repeatedly testified as to the *personal* gain to which the letter referred.  *See, e.g.*, A. 150 ("He wanted to win so basically he was providing documents or looking at documents [so] that he could protect himself and potentially the university."); A. 153 ("He was preparing a case to protect himself because these complainants had filed previous complaints against him personally."). Further, Knight conflates his *ability* to access the files with the University's *authorizing* him to access the files.  *See* A. 516 (prohibiting "gaining unauthorized access to . . . the files of another user").  As the District Court correctly noted, "nothing Plaintiff has identified would lead a reasonable factfinder to question that Plaintiff was fired for inappropriately accessing the files of other officers."  A. 659.

Under the second prong, Knight attempts to establish pretext by showing that similarly situated persons, not in the protected class, were treated more favorably.  *See Fuentes*, 32 F.3d at 765.  In support, he cites the fact that Motyl conceded the similarity of Knight's actions to those of two other employees, a janitor and Chief Simmons, who obtained physical files from co-workers' desks.  Neither the janitor nor Chief Simmons was terminated.  Knight contends that the janitor and Chief Simmons were similarly situated, and the only difference is that Knight was engaged in a protected activity.  But the undisputed evidence does not support this assertion.

Knight's termination for violating computer-use policy is unlike taking papers from a desk. A janitor's level of responsibilities and accountability regarding University resources does not compare to Knight's administrative position as Parking Manager. Moreover, Chief Simmons acted on the advice of counsel and HR when accessing the files, whereas Knight concedes that he accessed the files on his own and without instruction or consultation. Knight is therefore not similarly situated to the janitor and Chief Simmons.

On the undisputed record, a reasonable jury could not find a discriminatory purpose to be more likely than not the reason for Knight's termination. Because Knight has not established a genuine issue of material fact, the University was entitled to summary judgment.

### III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment and order.

10