NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 19-2027

———————

LIGER6, LLC,
                                Appellant
                    v.

SARTO ANTONIO; SARTO S.R.L.


———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-13-cv-04694)
District Judge: Honorable Jose L. Linares

———————

Submitted under Third Circuit LAR 34.1(a)
January 13, 2020

Before: HARDIMAN, PORTER, and PHIPPS, *Circuit Judges*.

(Opinion Filed:  January 22, 2020)

———————

OPINION*

———————

———————

   * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Liger6, LLC, an American bicycle seller and distributor, sued Antonio Sarto (Sarto) and Sarto S.r.l. (the Company), an Italian bicycle frame manufacturer. Both sides sought a declaratory judgment that they own the SARTO trademark. The District Court granted summary judgment for Defendants and Liger6 appealed. We will affirm.

I[1]

In reviewing the District Court's summary judgment, we view the facts and draw all reasonable inferences in favor of the nonmoving party (Liger6). *See Dougherty v. Sch. Dist. Phila.*, 772 F.3d 979, 986 (3d Cir. 2014).

Sarto sold bicycle frames bearing the SARTO mark in the United States since at least 2006. On April 30, 2013, Sarto created the Company and assigned to it all right, title and interest in and to the SARTO mark. App. 1165. The Company is controlled by Sarto and his son, Enrico (the Sartos).

In 2010, Enrico contacted Liger6 for help in promoting Sarto's bicycle frames in the United States. Liger6 proposed that Sarto manufacture frames bearing the SARTO mark, which Liger6 would then incorporate into its bicycles or resell to other bicycle

---

[1] The District Court had jurisdiction over the declaratory judgment claim under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

manufacturers as Sarto's exclusive distributor. The Sartos agreed, and Liger6 placed its first order.

Over the next two years, Liger6 devoted substantial resources to selling and promoting bicycle frames bearing the SARTO mark. For example, Liger6 spent about $250,000 on Sarto frames and sold some of them at a steep discount to promote the Sarto brand. Liger6 also spent more than $500,000 on marketing, attorney's fees, and liability insurance in connection with these sales.

In early 2011, Liger6 discovered that Sarto had not registered the SARTO mark in the United States. Liger6 claims that its principal, Marco Bonelli, insisted that Liger6 and Sarto jointly register and own the mark. In exchange, Liger6 would "pioneer[] and develop[] the United States market for SARTO-branded bicycle frames and bicycles." App. 527. Liger6 also claims that Bonelli "discussed this matter extensively with [the Sartos], who both verbally agreed." *Id.*

Liger6 retained an Italian attorney to "negotiate a written contractual agreement to formalize the business arrangement." App. 528. The attorney sent Sarto several draft agreements, each of which had a provision contemplating joint registration and

3

ownership of the mark.[2] The Sartos never signed the drafts, but they proposed changes to provisions besides the one dealing with registration and ownership.

While still negotiating a written contract with the Sartos, Liger6 applied to the United States Patent and Trademark Office (USPTO) to register the SARTO mark on its and Sarto's behalf. Liger6 claims it provided Sarto with "copies of all documents relating to this application." App. 528. But Sarto subsequently applied to register as the mark's sole owner in both Italy and the United States, seemingly unaware of Liger6's application.

Liger6 also claims that when the USPTO granted its application, it "forwarded a copy of this registration to Sarto." App. 531. But the Sartos expressed surprise that Liger6 had registered the mark and demanded that Liger6 surrender it. Liger6 initially complied because it feared that Sarto might end their business relationship. After Liger6

---

[2] The provision states:

> III) as part of their activities, [Liger6 and Sarto] have met and have established in recent times, "*de facto*" a profitable commercial cooperation in their common interest, as specified in the following paragraph;

> IV) in particular . . . *c*) the parties have . . . jointly applied in the US to register the trademark "Sarto" of which they are and will be co-owners, in order to strengthen the mutual connection and the common interest in the promotion and distribution of frames covered by that brand.

App. 563–64; App. 583–84; App. 603–4; App. 626–27; App. 649–50; App. 675–76.

4

learned that Sarto had applied for sole ownership of the SARTO mark, though, Liger6 filed yet another application to the USPTO—this time listing Liger6 as the mark's sole owner. Sarto ceased doing business with Liger6 soon thereafter.

In August 2013, Liger6 sued Defendants in the United States District Court for the District of New Jersey. Both sides sought a declaratory judgment that they are entitled to register the SARTO mark in the United States. Defendants moved for summary judgment, arguing that Sarto acquired rights in the mark by selling bicycle frames in the United States before doing business with Liger6 and that he never granted Liger6 any ownership interest in the mark. Liger6 countered that a jury could infer an oral agreement granting it such an interest, either from the joint trademark registration it obtained or from the draft agreements it sent to Sarto. The Court granted Defendants' motion as to the declaratory judgment but permitted Liger6 to proceed to trial on other claims. After a jury found for Defendants on those claims, Liger6 appealed the summary judgment to this Court.

II

We review a District Court's summary judgment de novo. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). Summary judgment is proper only when the record

"shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The District Court did not err in granting Defendants summary judgment as to the declaratory judgment claims. Liger6's only argument on appeal is that the District Court "failed to address Liger6's claim that it entered into an oral agreement with [Sarto] to jointly own the SARTO Mark [sic]." Reply Br. 1. But Liger6 conceded for purposes of summary judgment that Sarto never granted it any ownership interest in the mark, and Defendants alerted the District Court to this concession repeatedly at summary judgment. *Compare* App. 1173 ("Sarto never granted Liger any ownership interest in the name and mark SARTO . . . .") *with* Dist. Ct. Dkt. 2:13-cv-04694, ECF No. 89 ¶ 35 [Plaintiff/Counterclaim Defendant Liger 6 LLC's Responsive Statement of Material Facts] ("Only for purposes of Defendants' summary judgment motion, admitted."); *see* App. 1188, 1993–94. We cannot reverse the District Court for failing to consider a legal argument predicated on a fact unsupported by the record.

Moreover, no reasonable jury could conclude from the summary judgment record that Liger6 and Sarto entered an oral agreement to share the SARTO mark. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a dispute of fact is "genuine" only if "evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Liger6 argues that a jury might have credited Bonelli's declaration that the Sartos agreed

to share the mark in exchange for Liger6 "pioneering and developing the United States market." Opening Br. 16–18. But without any detail about the terms of the alleged agreement and the circumstances surrounding its formation, no reasonable jury could conclude that the parties formed an enforceable contract regarding the mark.

Nor do the draft agreements or joint trademark application support a conclusion that the Sartos agreed to share the mark. Liger6 cites a provision in the draft agreements stating that the parties "have . . . jointly applied in the US to register the trademark 'Sarto' of which they are and will be co-owners." Opening Br. 19–22. But Sarto never signed any of the agreements. Indeed, when Liger6 sent the first draft agreement to Sarto, it had not yet applied to register the mark. Liger6's reliance on the joint trademark application to prove that Liger6 and Sarto "agreed they would jointly own the mark, and that Defendants changed their minds" is also unconvincing. Opening Br. 21. In its own complaint, Liger6 alleges that it surrendered its registration because it had "erroneously named" Sarto as a joint owner—not because Defendants changed their minds about joint ownership. App. 54.

Finally, the mere fact that Liger6 devoted substantial resources to selling and promoting bicycle frames bearing the SARTO mark does not support a conclusion that Sarto agreed to share the mark. Because Liger6 was Sarto's exclusive dealer, its investments would have been in its commercial interest whether or not it owned the mark

jointly with Sarto. Thus, Liger6's investments are "not significantly probative" of whether Liger6 and Sarto agreed to share the mark. *Anderson*, 477 U.S. at 249.

\* \* \*

For the reasons stated, we will affirm the District Court's summary judgment in favor of Defendants.