**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1908
_____

KATHLEEN M. JUNGCLAUS
                                        Appellant

v.

WAVERLY HEIGHTS LTD; THOMAS P. GARVIN;
JOHN AND JANE DOE NUMBERS 1-21
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cv-04462)
District Judge:  Honorable Paul S. Diamond
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 9, 2023
_____

Before:  CHAGARES, <u>Chief</u> Judge, SCIRICA, and SMITH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: February 23, 2023)
_____

OPINION[*]
_____

_____

[*]    This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Kathleen Jungclaus filed a lawsuit against her former employer, Waverly Heights, LTD ("Waverly"), alleging sex and age discrimination, retaliation, and hostile work environment. The District Court granted summary judgment for Waverly. Jungclaus now appeals that decision. For the following reasons, we will affirm the District Court's grant of summary judgment.

I.

We write solely for the parties and so recite only the facts necessary to our disposition. Waverly is a private retirement residence. Jungclaus worked at Waverly for nearly twenty years, serving first as Waverly's Human Resources Director and then Vice President of Human Resources until her termination in late 2016 (when she was 55 years old). Jungclaus managed all employee hiring, promotion, discipline, and termination; evaluated performance; and directed the resolution of grievances. She was subject to annual performance evaluations, and her evaluations were generally satisfactory. She received regular raises and discretionary bonuses.

On July 24, 2016, Jungclaus tweeted at then-presidential candidate Donald Trump the following:

> @realDonaldTrump I am the VP of HR in a comp outside of philly an informal survey of our employees shows 100% AA employees voting Trump!

App. 442. At the time she posted the tweet, Jungclaus's Twitter account was public. She was also following Waverly's twitter account. On September 14, 2016, an anonymous "member of the Waverly community" notified Jungclaus's superiors of the tweet. App.

2

436. When confronted by her superiors, Jungclaus provided shifting explanations of the tweet's origins but ultimately did not deny sending it. After an emergency meeting, the Waverly Board of Trustees Human Resources Committee agreed that Jungclaus should be fired for violating Waverly's social media policy. That policy, which Jungclaus helped create, provides that: (1) other Waverly employees should not be mentioned in a social media post without permission from those individuals; (2) "behavior that is not permitted in the workplace is also prohibited on social media"; and (3) a violation of the policy is grounds for termination. App. 267–69.

Jungclaus was terminated on September 27, 2016. Lauren Kelley, age 43, replaced her. Following her termination, Jungclaus applied for, and ultimately received, unemployment compensation. Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev., 173 A.3d 1224, 1230 (Pa. Commw. Ct. 2017). Jungclaus subsequently brought this suit against Waverly alleging, in relevant part, age and sex discrimination, hostile work environment, and retaliation.[1] The District Court granted Waverly's motion for summary judgment. This appeal ensued.

## II.[2]

Jungclaus raises a single argument on appeal: that her firing constituted a

---

[1] Jungclaus also brought claims against Waverly's Chief Executive Officer, Thomas Garvin, and twenty-one unnamed members of Waverly's Board of Trustees. The District Court dismissed those claims against Garvin and the other unnamed individuals with prejudice, leaving only the claims against Waverly at issue here. See Jungclaus v. Waverly Heights, Ltd., 2018 WL 1705961, at *10 (E.D. Pa. Apr. 9, 2018).

[2] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary

3

"discriminatory double standard" when compared with the treatment of a Waverly Board of Trustees member, Chuck Soltis, who allegedly circulated offensive political material at the company.[3]  When, as here, there is no direct evidence of discrimination, a court analyzes Title VII and ADEA discrimination claims under the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d Cir. 2013).  Under this framework, a plaintiff must "establish a prima facie case by a preponderance of the evidence." Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997).  If a plaintiff makes this prima facie case, the burden shifts to defendant to "articulate some legitimate, nondiscriminatory reason for the [adverse action]." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir.

judgment de novo and apply the same standard as that court.  See Nicini v. Morra, 212 F.3d 798, 805–06 (3d Cir. 2000).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[3] Jungclaus's brief fails to identify what specific facets of the District Court judgment it is challenging on appeal.  While she does make general assertions regarding the District Court's purported misapplication of the summary judgment standard, as well as sporadic, conclusory references to her hostile work environment claim, we construe her brief to target solely the District Court's discrimination determination given her focus on the alleged contrast between how Waverly handled her tweet and the emails sent by Soltis, a member of the "good ole boy male board," Jungclaus Br. at 3.  Any arguments as to her other claims for retaliation and hostile work environment are, accordingly, forfeited. See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 145 (3d Cir. 2017) ("[W]e have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing.").  Even if we were to liberally construe Jungclaus's sparse briefing as reaching those claims, we would affirm the grant of summary judgment.  The District Court authored a thorough and correct analysis of each aspect of these claims.  On this record, there is no genuine dispute of material fact; no reasonable factfinder could find that Jungclaus was subject to retaliation or a hostile work environment.

2003) (quoting <u>McDonnell Douglas</u>, 411 U.S. at 802). If a defendant rebuts the prima facie case, the plaintiff must "establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination." <u>Id.</u>

We agree with the District Court's careful analysis of each <u>McDonnell Douglas</u> step and need not rehash the entirety of that reasoning here. For our purposes, it is sufficient to emphasize that, even if Jungclaus could make out a prima facie case of age or gender discrimination, Waverly articulated a legitimate and nondiscriminatory reason for terminating[4] her: its conclusion that she violated its social media policy. There is extensive evidence in the record supporting Waverly's contention that it fired Jungclaus for violating that policy, including contemporaneous emails among the decisionmakers, consistent testimony by key witnesses,[5] and the plain text of the policy, which explicitly contemplated termination as a penalty. It matters little whether Waverly's determination that she had violated the policy was correct. After all, the relevant inquiry is "whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994).

---

[4] The District Court construed Jungclaus's complaint to include discrimination allegations pertaining to bonus payments she received that were smaller than those received by her male colleagues. Jungclaus's brief does not mention, let alone substantively address, the grant of summary judgment as to those alleged bonus disparities. We thus conclude that she has forfeited any argument to that end and only analyze the circumstances surrounding her termination. <u>See</u> <u>Barna</u>, 877 F.3d at 145.

[5] In fact, during the unemployment proceedings, Jungclaus herself stated that she "was fired over a knee jerk reaction to an anonymous letter, and speculation over what the meaning of the tweet was." App. 519. She made no mention of alleged discrimination at that time.

5

The record leaves no room for doubt on this front – Waverly's termination decision was driven by its conclusion that Jungclaus had violated the social media policy.

Jungclaus, for her part, failed to carry her subsequent burden of showing by a preponderance of evidence that Waverly's termination reasoning was pretextual. See id. at 763. Her brief's singular fixation on Waverly's allegedly disparate handling of Soltis's emails is inapposite. Waverly's conduct in that separate context has no ostensible connection to its proffered rationale in this one, let alone a connection that suggests gender or age discrimination. Though it is possible to show pretext by demonstrating that "the employer treated other, similarly situated persons not of [her] protected class more favorably," id. at 765, there is nothing in the record suggesting that Jungclaus was similarly situated to Soltis. Key substantive differences include their differing positions at the company (employee versus board member), their differing forms of communication (social media versus Soltis's email), and their different audiences (the public at large versus Soltis's private list of chosen recipients).

Considering Waverly's well-documented termination rationale and Jungclaus's failure to show that reasoning to be pretextual, no reasonable factfinder could infer that Waverly's decision to terminate Jungclaus for violation of the social media policy constituted age or gender discrimination.

## III.

For the foregoing reasons, we will affirm the grant of summary judgment.

6