**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1641
_____

ALASTAIR CROSBIE,
                                        Appellant

v.

HIGHMARK INC.; HIGHMARK HEALTH OPTIONS;
GATEWAY HEALTH PLAN
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-01235)
District Judge: Honorable Michael M. Baylson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 21, 2022

Before: BIBAS, MATEY, and PHIPPS, *Circuit Judges*

(Filed: August 26, 2022)
_____

Bryan R. Lentz
Kiersty DeGroote
BOCHETTO & LENTZ, P.C.
1524 Locust Street
Philadelphia, PA 19102

Peter R. Bryant
DILWORTH PAXON
457 Haddonfield Road, Suite 700
Cherry Hill, NJ 08002

*Counsel for Appellant*

Kim M. Watterson
Nicole J. Aiken-Shaban
REED SMITH LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

*Counsel for Appellees Highmark Inc. and Highmark Health Options*

Nina K. Markey
Alexa J. Laborda Nelson
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102

*Counsel for Appellee Gateway Health Plan*

BIBAS, *Circuit Judge*.

Whistleblowing does not insulate an employee from being fired for misconduct. Alastair Crosbie reported signs of possible fraud. More than a year later, his coworker accused him of harassment. His employer investigated the accusation and fired him within two days. Crosbie says flaws in the investigation show that it must have been a sham. He insists that the real reason he was fired was his whistleblowing, not his coworker's complaint. Because he has not debunked his employer's explanation, we will affirm.

## I. BACKGROUND

Crosbie was hired by Gateway to help Highmark, a health-insurance company, investigate fraud. (Because Gateway wrote his paychecks but a Highmark employee decided to fire him, we call them both his employers.) While auditing Highmark's network of doctors, Crosbie found some troubling facts. For instance, he says he discovered that some doctors had prior convictions for selling opioid prescriptions. Others, he maintains, lacked required Medicaid licenses. In mid-2017, he reported his concerns to his managers at Gateway. They investigated but decided not to take any action. Yet Crosbie kept pressing the issue. Eventually, his managers told him to drop it.

Fast-forward to October 1, 2018, more than a year after his first report. Crosbie's coworker lodged a complaint against

him. She said that Crosbie had called her "Miss Piggy" and "oinked" at her. App. 455–56. Gateway's human-resources team (HR) investigated. Their investigator interviewed Crosbie, the complainant, and an eyewitness who corroborated the complainant's story. She also interviewed other people who knew of past issues between Crosbie and the complainant. And she spoke to Jim Burgess, one of the managers who had told Crosbie to drop the fraud issue. Burgess told the investigator that he would have questioned the allegations. But earlier that day, Crosbie had called him and made "coughing" and "snorting" noises, which made him think that Crosbie "did it." App. 1076, 1313. On October 3, HR fired Crosbie.

Crosbie shot back, suing Gateway and Highmark under the False Claims Act for retaliation. Crosbie claimed that they had fired him because of his fraud reports. The employers replied that the people who had decided to fire Crosbie knew nothing about his reports and that they had good reason to fire him. Agreeing, the District Court granted summary judgment. Crosbie, it concluded, had not shown that the employers' reason was a mere pretext for retaliation.

Crosbie now appeals. We review the grant of summary judgment de novo and draw every reasonable inference in Crosbie's favor. *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 708 (3d Cir. 2018). Summary judgment is proper if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Here, there is not.

4

## II. CROSBIE DOES NOT REFUTE THE EMPLOYERS' REASON FOR FIRING HIM

We normally analyze retaliation cases under a three-step burden-shifting framework. First, the employee alleges that he has been fired (or demoted or the like) for protected conduct. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Then, the burden shifts to the employer to give a valid basis for firing him. *Id.*; *see Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001) (False Claims Act retaliation). Last, the burden returns to the employee to show that the alternative reason is just "a pretext for discrimination" or retaliation. *Reeves*, 530 U.S. at 143 (internal quotation marks omitted).

We have never held that this three-step framework governs False Claims Act claims. But the parties do not dispute it, so we assume without deciding that it does. We also assume, as did the District Court, that the parties have passed the first two steps. Because pretext is where the action is, we focus there.

Crosbie can prove pretext one of two ways. First, he can so thoroughly disprove his employers' explanation for firing him that a jury could find it "unworthy of credence." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (internal quotation marks omitted). That means showing not just "that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc). Or Crosbie can cut to the chase and show directly that retaliation "was more likely than not a motivating or determinative" reason for his firing. *Fuentes*, 32 F.3d at 762.

Either way, the question is not whether firing Crosbie was "wise," but whether his employers retaliated. *Id.* at 765. And either way, he needs evidence. *Id.* at 762; *see also Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996) (en banc).

Crosbie thinks he has enough evidence to support either pretext theory. First, he points to the quality of the harassment investigation. It was so flawed, he argues, that it must have been a sham. Second, he stresses Burgess's participation in that investigation. He alleges that Burgess, who knew of Crosbie's protected activity, used the harassment investigation to get rid of him. In other words, Burgess used the investigation as a "cat's paw."

Either way, Crosbie lacks proof. His mere suspicions of shady behavior do not show pretext. We hold that Crosbie cannot show retaliation just by pointing out an investigation's flaws. Nor can he prevail on his cat's-paw theory without showing that the people who fired him relied on Burgess's statements.

## A. An imperfect investigation alone does not show pretext

First, Crosbie objects that the investigation was slapdash. The investigator, he says, did not follow standard procedure, interview every witness, or look at the complainant's history of baseless allegations. But sloppiness is not enough. The question is not whether Gateway conducted the "best, or even a sound" inquiry, but whether the investigation was a sham, a

mere pretext to retaliate. *Keller*, 130 F.3d at 1109 (internal quotation marks omitted).

This investigation was far from a facade. HR received a complaint from Crosbie's coworker. They interviewed her, Crosbie, and an eyewitness who corroborated the complainant's account. At Crosbie's urging, they also interviewed other witnesses who were aware of past issues between Crosbie and the complainant. Perhaps they could have done more. But Crosbie fails to show that the investigation was so thoroughly flawed that a jury could find it unbelievable. *Cf. Fuentes*, 32 F.3d at 765.

Crosbie next insists that even if he cannot *show* that the investigation was pretextual, its timing supports an inference of retaliation. It does not. True, we sometimes infer retaliation when someone is fired conspicuously soon after he blows the whistle. *See, e.g.*, *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279–81 (3d Cir. 2000). But Crosbie has the opposite problem. Much of the alleged protected conduct predated his firing by more than a year. Crosbie sent his last complaint at least a month before Gateway fired him. Yet he was fired a mere two days after he apparently oinked at his coworker. So the reasonable temporal inference is that Gateway fired him for oinking.

In any event, an investigation's quality or timing can support an inference of pretext only if those running the investigation know of the protected activity. Crosbie concedes that HR did not know about his False Claims Act reports. So that team could not have been using the investigation to cover their tracks because they had no reason to think that they had tracks to cover. They, not upper management, decided to fire him.

7

And because HR did not know of his reporting, it could not have fired him in retaliation. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015) ("The plaintiff … cannot establish … a causal connection without some evidence that the [decisionmakers] knew of the plaintiff's protected conduct at the time they acted.").

## B. Crosbie's cat's-paw theory fares no better

This brings us to Crosbie's second argument. Even if HR itself did not mean to retaliate, some nefarious manager might have used it as an instrument of retaliation—a cat's paw. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011). Crosbie's theory goes like this: HR got a harassment complaint and investigated it. At some point, they spoke to Burgess, who knew of Crosbie's False Claims Act reports. Angry about those reports, Burgess wanted Crosbie out. So he seized on the opportunity, telling the investigator that he believed the harassment complaint. Relying on that comment, HR prematurely ended the investigation and fired Crosbie. Or so he says.

An employer can be liable on the cat's-paw theory only if a non-decisionmaker's act proximately caused the firing. Sometimes causation can be inferred from circumstantial evidence. *Farrell*, 206 F.3d at 280–81. But a bald assertion is not enough. Our cases emphasize three requirements for a cat's-paw theory to succeed:

1. *Retaliatory animus*. The non-decisionmaker must be motivated by a desire to retaliate. *See McKenna v. City of Philadelphia*, 649 F.3d 171, 179 (3d Cir. 2011) (requiring proof that retaliatory animus played a "direct

and substantial" and "foreseeable" role in an employee's firing).

2. *Communication*. The non-decisionmaker must communicate with the decisionmaker. *See Staub*, 562 U.S. at 421, 422 (concluding that a "biased report" can count as that "act"); *McKenna*, 649 F.3d at 179 (biased disciplinary record); *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001) (evaluations, memos, and comments).

3. *Reliance*. Then, in firing (or otherwise acting against) the employee, the decisionmaker must rely on the non-decisionmaker's communication. *See Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 331 (3d Cir. 2015).

Crosbie's cat's-paw theory fails at both the first and third prongs. On animus, he offers some disputed evidence that Burgess disliked him. But he has no evidence that Burgess wanted him fired, much less that he wanted him fired because of his False Claims Act reporting. After all, Burgess told the investigator that he would have questioned the allegations but for Crosbie's behavior on their phone call about the investigation.

Crosbie's reliance problem is worse. Even if he could show that Burgess meant to retaliate, he has no evidence that Burgess's discussion with the investigator influenced the investigation or his firing. That train had left the station long before Burgess got involved. The investigator started investigating Crosbie before she ever talked to Burgess. By the time she got to Burgess, she had questioned several witnesses, including Crosbie himself and the complainant. There is no reason to

think that Burgess's comments caused the investigation to end early or changed the decisionmaker's mind.

Speculation is no substitute for evidence. Because Crosbie has no evidence that Burgess played a causal role in his firing, summary judgment was proper.

### III. CROSBIE CANNOT SHOW THAT LACK OF DISCOVERY PREJUDICED HIM

Last, Crosbie objects that the District Court refused to compel discovery of the complainant's personnel file. Perhaps he does not have enough evidence now, he thinks, because he did not have the chance to get it. We review the District Court's denial for abuse of discretion. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 281 (3d Cir. 2010). Crosbie must show that the denial caused him "actual and substantial prejudice." *Id.*

Yet Crosbie's proof of prejudice is speculative at best. He gives us little reason to think that extra discovery would have changed the outcome. True, the complainant's personnel file could show that she had a history of making unfounded complaints about her coworkers. Even so, there still would not be enough evidence to show that HR was "plainly wrong" to believe her complaint. *Keller,* 130 F.3d at 1109. HR decided based on an investigation that involved multiple witnesses, including an eyewitness who corroborated the complainant's story. Plus, even finding dirt on the complainant would at most suggest that she was lying, not that managers were using her complaint as a pretext to retaliate.

* * * * *

Crosbie says he was fired not because of his coworker's harassment complaint but because he had reported possible fraud. But he fails to show that the harassment investigation was a sham. Nor does he show that Burgess manipulated the investigation to get him fired in retaliation. So we will affirm.