**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 23-2060

———————

LEROY WILLIAMS,
          Appellant

v.

SCHOOL DISTRICT OF PHILADELPHIA

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-22-cv-03313)
District Judge: Honorable Gerald J. Pappert

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
March 7, 2024

———————

Before: SHWARTZ, CHUNG, and AMBRO, <u>Circuit Judges</u>.

(Filed: March 13, 2024)

———————

OPINION[*]

———————

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Plaintiff Leroy Williams appeals the District Court's order granting summary judgment in favor of Defendant School District of Philadelphia on his employment discrimination claims. For the following reasons, we will affirm.

I

A

Williams, an African-American male, has been employed as a school counselor by the Defendant since November 1993. During the relevant period, Williams was assigned to Horace Furness High School. On December 1, 2020, Jennifer Barbo, a white female and the only other counselor at Furness, complained that Williams made inappropriate statements to her. Those comments include:

- "You know that if I wasn't married to my wife I'd be all over your fat ass."
- "Depressed?! But you're too fine to be depressed."
- "[Y]ou're thick for a white girl."
- "The boys must love you."

App. 219.

Consistent with its policy, Defendant assigned Williams to a "reassignment room" in Defendant's administration building while it investigated the sexual harassment allegation.[1] Williams concedes that race and sex did not factor into Defendant's decision

_____

[1] Williams's initial reassignment, from December 11, 2020, through the end of the school year in June 2021, was virtual due to the COVID-19 pandemic. For the 2021-2022 school year, Williams reported in-person to the reassignment room.

to reassign him. Williams asserts that the room lacked windows and ventilation, was unclean, and that he was forced to sit on a hard chair for six-to-seven hours per day.[2]

Tracie Gardner, a labor relations officer, investigated Barbo's complaint. On December 14, 2020, Gardner interviewed Williams in the presence of his union representative, but, on the advice of his representative, Williams declined to answer questions because he was not provided a copy of Barbo's statement before the interview.[3] Gardner drew negative inferences from Williams's failure to participate in the interview and reported that (1) Barbo was credible, (2) Barbo's allegations were well-founded, and (3) although Williams's conduct violated Defendant's code of ethics, it did not amount to unlawful discrimination or harassment.

Thereafter, Williams met with Furness's principal and presented his version of events. Williams explained that Barbo targeted him because she wanted to push him out of Furness to protect her more junior position and deflect attention from her own poor performance issues and mental health challenges. Furness's principal then concluded, in part due to Williams's initial refusal to answer questions, that Williams did make the statements that Barbo attributed to him. A second-level hearing officer upheld the factual

---

[2] Williams alleges the conditions in the reassignment room led to back pain, boils, weight gain, depression, anxiety, and mental anguish. He concedes, however, that employees were permitted to leave the room and walk around, and that on numerous occasions he was permitted to arrive late or leave early for personal reasons.

[3] Before the interview, Williams was given notice of the allegations and a chance to respond. The fact he was not initially provided with Barbo's statement before the first interview, which Williams concedes was not required, does not mean he was deprived of due process, and he in fact was provided with the statement during later parts of the process and before any formal discipline was imposed.

findings, and, ultimately, (1) Williams received a warning and (2) documents related to the events and investigation were placed in his file for eighteen months, after which he could seek their removal. Effective February 23, 2022, Williams returned to Furness. He was never suspended, lost no salary,[4] and retained his seniority.

B

Williams sued Defendant, asserting that Barbo's harassment report was the result of racial and gender-motivated discrimination in violation of Title VII of the Civil Rights Act of 1964.[5, 6]

After discovery, Defendant moved for summary judgment. The District Court granted the motion, holding that: (1) Williams failed to show a prima facie case of discrimination because his removal was temporary and no evidence could support an inference of discrimination, and (2) even if hems could make out his prima facie case, Defendant had a legitimate, nondiscriminatory reason for the reassignment, namely its standard practice of reassigning individuals accused of sexual harassment to the

---

[4] Williams contends he lost $5,100 he would have earned as the school's badminton coach, for supervising detention, and for providing class coverage. Williams also contends that he incurred therapy and other medical bills.

[5] Williams conceded before the District Court that summary judgment for Defendant was appropriate on his retaliation claim under Title VII and his claims under 42 U.S.C. § 1981. Dist. Ct. Dkt. 21 (Hr'g Tr. at 2:25-3:19).

[6] Williams denies Barbo's allegations and contends that they were racially motivated based on her reference to race in one of her allegations. Specifically, Williams points to Barbo's allegation that Williams called her "thick for a white girl." Appellant's Br. at 23-24. Williams also contends that Defendant treated Caucasian employees more favorably, but the only employee he ever identified was Barbo.

reassignment room while it investigates the harassment complaint. <u>Williams v. Sch. Dist.</u> <u>of Phila.</u>, Civ. No. 22-3313, 2023 WL 3440254, at *4-5 (E.D. Pa. May 12, 2023).

Williams appeals.

II[7]

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

To defeat a motion for summary judgment, a plaintiff must show a prima facie case of discrimination, which requires that he demonstrate: "(1) []he was a member of a protected class; (2) []he was qualified for the position; (3) []he suffered an adverse employment action; and (4) . . . the adverse employment action 'occurred under circumstances that could give rise to an inference of intentional discrimination.'" <u>Burton</u> <u>v. Teleflex Inc.</u>, 707 F.3d 417, 426 (3d Cir. 2013) (citations omitted).[8] Even assuming

---

[7] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C § 1291. Our review "of a grant of summary judgment is plenary[.]" <u>Watson v. Eastman Kodak Co.</u>, 235 F.3d 851, 854 (3d Cir. 2000). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[8] We analyze discrimination claims involving indirect evidence, like the one here, using the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). <u>Burton</u>, 707 F.3d at 425-26. If a plaintiff makes a prima facie case, then the burden shifts to the defendant to offer a legitimate non-discriminatory reason for the adverse employment action, and, if offered, the plaintiff must then produce evidence allowing the reasonable inference that the proffered reason is a mere pretext for discrimination. <u>Id.</u> at 426 (citations omitted). We need not address these latter steps because Williams fails to establish a prima facie case.

Williams satisfies the first three elements, he has not adduced evidence from which a reasonable jury could draw an inference of discrimination.

Williams argues an inference of discrimination can be drawn under the "subordinate bias" or "cat's paw"[9] theory. Under agency principles, an employer should not be shielded from "discriminatory acts and recommendations of [its employees] that were designed and intended to produce the adverse action." Staub v. Proctor Hosp., 562 U.S. 411, 420 (2011). Therefore, an agent's discriminatory animus can be a "motivating factor in the employer's action" sufficient to prove intentional discrimination. Id. at 421; see also McKenna v. City of Phila., 649 F.3d 171, 178-79 (3d Cir. 2011) (applying cat's paw theory in a Title VII case). A plaintiff asserting that an employer is liable under the cat's paw theory must prove: (1) a non-decisionmaker "intended to cause . . . an adverse employment decision" based on that person's discriminatory animus, Staub, 562 U.S. at 421; (2) the non-decisionmaker communicated with the decisionmaker, Crosbie v. Highmark Inc., 47 F.4th 140, 146 (3d Cir. 2022); and (3) the non-decisionmaker's actions proximately caused the adverse employment action, McKenna, 649 F.3d at 178-79.

Even assuming that the record would allow a reasonable jury to conclude that Barbo's report was false and intended to cause an adverse employment decision against Williams, the record does not provide a basis from which a reasonable jury could infer that Barbo had discriminatory animus. In his brief, Williams principally relies on Barbo's allegation that he said she was "thick for a white girl" as the basis for his

---

[9] This theory is named after one of Aesop's fables. McKenna v. City of Phila., 649 F.3d 171, 177 n.6 (3d Cir. 2011) (citations omitted).

assertion that racial animus motivated her report.[10]  Appellant's Br. 23-24.  Barbo's

relaying of this comment, however, does not show that she filed the sexual harassment

report based on racial or sexual animus toward Williams and thus does not provide a

basis upon which a reasonable jury could conclude that she filed the report based on

Williams gender or race.[11]

Because the record does not show that Barbo's report was "based on [racial or

gender] discriminatory animus," Staub, 562 U.S. at 421, and because Williams does not

contend that Defendant's decision to place him in the reassignment room, investigate the

harassment complaint, or impose sanctions was motivated by discriminatory animus, the

District Court correctly concluded that Defendant was entitled to summary judgment.[12]

III

For the foregoing reasons, we will affirm.

---

[10] Williams also asks the Court to blindly assume there were other racially or gender-motivated comments because Barbo's complaint discusses unspecified "comments" and "remarks" in the plural.  These "bald assertion[s]" about unspecified comments, however, are insufficient to support a cat's paw theory.  See Crosbie, 47 F.4th at 146 ("[A] bald assertion is not enough.").

[11] Williams's argument about this statement is also undermined by his own statements during discovery that he believed Barbo made the purportedly false report so that she could take his job and to distract from her own performance issues, and thus not based on racial or gender animus.

[12] Williams also argues that this decision to reassign him violated his right to notice, an explanation of the evidence, and opportunity to be heard under Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546-48 (1985).  Loudermill, however, applies to terminations. See Gilbert v. Homar, 520 U.S. 924, 932 (1997) (suggesting that Loudermill does not apply where the employee faces "only a temporary suspension without pay" (emphasis omitted)).  Here, Williams was not terminated.