**NON PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1659
_____

BAYMONT FRANCHISE SYSTEMS INC, A Delaware Corporation

v.

THE BERNSTEIN COMPANY LLC, A Louisiana Limited Liability Company;
DAVID B. BERNSTEIN, An Individual


DAVID B. BERNSTEIN, Third Party Plaintiff

v.

WYNDHAM HOTEL GROUP, LLC, a/k/a Wyndham Hotels & Resorts, Inc.,
Third Party Defendant

The Bernstein Company, LLC; David B. Bernstein,
Appellants
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:18-cv-0620)
District Court: Honorable Evelyn Padin
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on July 7, 2025

Before: RESTREPO, BIBAS, and CHUNG, *Circuit Judges*

(Filed: December 15, 2025)

_____

OPINION[*]

_____

RESTREPO, *Circuit Judge*

David B. Bernstein[1] ("Appellant" or "Bernstein") appeals from the grant of

summary judgment in favor of Appellee Baymont Franchise Systems Inc. ("Baymont")

on Baymont's claims of breach of a franchise agreement ("Franchise Agreement" or

"Agreement") and Guaranty. Appellant also challenges the denial of leave to amend his

pleadings. For the reasons that follow, we affirm.

## I.[2]

In 2014, Baymont entered into the Franchise Agreement with the Bernstein

Company[3] for the operation of a 60-room Baymont guest lodging facility ("Facility")

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

[1] Although the notice of appeal was filed by both defendants - The Bernstein Company, LLC ("Bernstein Company" or "the Company") and David B. Bernstein, this Court dismissed the appeal as to the Company due to noncompliance with the requirement that business entities may litigate in this Court only through an attorney admitted to this Court's bar. Thus, David B. Bernstein, proceeding pro se, is the sole remaining appellant. He represented in the District Court that he was a lawyer on inactive status licensed in Louisiana, and he has since indicated to this Court that he is now a retired attorney.

[2] Because we write solely for the parties, the Court assumes familiarity with the facts.

[3] While this action was initially brought against Appellant Bernstein and the Bernstein Company, the District Court docket reflects that default was entered against the Bernstein Company for failure to plead or otherwise defend. Nevertheless, Appellant Bernstein apparently continued to subsequently file various motions in the District Court on behalf

located in Rome, Georgia. Appellant has conceded in discovery responses that the Company failed to pay certain Recurring Fees to Baymont, and that the Reservation System between the parties was suspended as a result,[4] pursuant to section 11.4 of the Franchise Agreement. Further, in Answers to Interrogatories, Appellant conceded, "one fact on which the parties agree is that the Franchise Agreement terminated on July 5, 2017." D.N.J. ECF 119-2 (Answer to Interrog. No. 16). He further explained that at that time "the hotel was essentially foreclosed upon by the bank" and the Bernstein Company "execute[d] a quit claim bill of sale in connection with that foreclosure." App. 342 (Bernstein Dep. at 25:16-25, 26:1-2).

Section 11.4 allowed Baymont to

> suspend the Facility from the Reservation System for any default or failure to pay or perform under [the Franchise] Agreement or any other written agreement with [Baymont] relating to the Facility, . . . discontinue reservation referrals to the Facility for the duration of such suspension, and [ ] divert previously made reservations to other Chain Facilities after giving notice of non-performance, non-payment or default.

App. 102. In addition, Appellant Bernstein provided Baymont with a Guaranty of the Bernstein Company's obligations under the Agreement, wherein Appellant agreed, among other things, to "guaranty that [the Bernstein Company's] obligations under the

---

of both Defendants (despite the default), and the District Court included (at least nominally) both Defendants in various Memoranda and Orders. Therefore, at times, we refer to both Defendants as at least nominally participating in the filing of various motions in the District Court.

[4] Under the Agreement, Baymont operated a Reservation System for the booking of reservations for its Chain Facilities.

3

Agreement . . . will be punctually paid and performed," and that upon a default under the Agreement, Appellant "will immediately make each payment and perform or cause [the Bernstein Company] to perform, each unpaid or unperformed obligation of [the Company] under the Agreement." App. 130. Under the Guaranty and Agreement, Appellant also agreed to pay all costs and expenses, including reasonable attorney fees, incurred by the prevailing party in enforcing the prevailing party's rights or remedies under the Agreement.

On or about July 5, 2017, the Bernstein Company triggered termination of the Franchise Agreement, under section 11.2, when it lost possession of the Facility. By letter dated August 4, 2017, Baymont acknowledged the Bernstein Company's termination of the Agreement, effective July 5, 2017, when the Bernstain Company lost possession of the Facility. Baymont's letter further advised that the Company was required to pay to Baymont, as liquidated damages for premature termination, the sum of $26,971.62 as provided under section 18.1 of the Agreement, and all outstanding Recurring Fees and other charges.

## II.

Baymont initiated this lawsuit in the District Court alleging breach of the Agreement and the Guaranty with claims for relief of the Recurring Fees, liquidated damages, interest, attorney fees, and costs. The District Court thereafter entered default as to the Bernstein Company for failure to plead or otherwise defend. Following the subsequent filing of Defendants' Amended Answer and Counterclaim, Baymont filed an Answer to the Counterclaim. Appellant then moved for leave to file a Second Amended

4

Answer and Counterclaim, and the District Court denied the motion to amend.

Appellant subsequently moved for leave to file a Third Amended Answer, Counterclaim, and Third-Party Complaint Against Wyndham Hotel Group, LLC a/ka Wyndham Hotels & Resorts, Inc. ("WHG"),[5] and then he withdrew that motion, and he moved for leave to file a Fourth Amended Answer, Counterclaim, and Third-Party Complaint instead. The District Court granted Appellant's motion for leave to file a fourth amended pleading. In doing so, the District Court noted that, while Baymont may be correct in its assertion regarding the futility of Appellant's proposed amendments, that determination would be better suited in this case by disposition of a subsequent motion to dismiss. The Court also clarified:

> While the Court grants Bernstein's present motion to amend, the Court notes that this is [Appellant's] fourth time seeking leave to amend and motions to amend may be denied based on a repeated failure to cure deficiencies through multiple prior amendments. Should Bernstein wish to move for further amendments, he shall set forth the reasons why any additional proposed amendments were not included in previous versions of his pleading.

D.N.J. ECF 56, at 12 n.2.

Appellant subsequently filed a Fourth Amended Answer, Counterclaim against Baymont, and a Third-Party Complaint against WHG. Baymont and WHG filed Motions to Dismiss the Amended Counterclaim and Third-Party Complaint, respectively. Defendants filed an Opposition to the Motions to Dismiss and included a Request for

---

[5] Baymont asserts in its brief on appeal that Appellant improperly named WHG.

Leave to File Defendants' Fifth Amended Answer, Counterclaim against Baymont, and Third-Party Complaint against WHG. The Court granted the motions to dismiss, and struck, without prejudice, Defendants' Fourth Amended Answer. The Order also permitted Defendants to file a proper motion to amend their Answer, Counterclaim, and Third-Party Complaint within 30 days.

Appellant then filed an "Amended Motion For Leave to File an Amended Motion to File Fifth Amended Answer, Counterclaim, and Third-Party Complaint Pursuant to Rule 27(3)(B) and Local Civil Rule 15.1." D.N.J. ECF 83. By Opinion and Order entered July 13, 2021, Magistrate Judge Andre M. Espinosa, to whom the motion was referred for disposition, denied the motion for leave to amend because, among other things, Appellant's proposed amended claims would be futile. Appellant filed a Motion for Reconsideration, which Judge Espinosa denied. Appellant then filed a Motion to Appeal Magistrate Judge Espinosa's Decision, and District Judge John Michael Vazquez denied that appeal and affirmed Judge Espinosa's Opinions and Orders. By letter brief dated February 16, 2022, Defendants requested leave to file an amended answer and counterclaim, and the Court denied that request.

On June 3, 2022, Baymont filed a motion for summary judgment,[6] and following briefing, Judge Padin granted Baymont's motion on March 9, 2023 and ordered that Judgment be entered in favor of Baymont and against Defendants in the amount of

---

[6] Following the filing of the summary judgment motion, the case was reassigned to District Judge Evelyn Padin in June 2022.

$136,767.34 in Recurring Fees, $49,634.82 in liquidated damages, and $2,993 in reimbursement costs, totaling $189,395.16. The Court also ordered Baymont to submit an application for attorney fees and costs. Defendants filed a motion for reconsideration which was denied.

Upon consideration of Baymont's subsequent application for counsel fees, the Court awarded Baymont fees in the amount of $104,701.21. The Court accordingly entered a Final Judgment against Defendants in total amount of $294,096.37, comprised of: (1) $136,767.34 for outstanding Recurring Fees; (2) $49,634.82 for liquidated damages; (3) $2,993 for reimbursement costs; and (4) $104,701.21 for attorney fees.

On appeal, Appellant argues the Court erred in granting Baymont's summary judgment motion. He also challenges the denial of his motion for leave to amend the pleadings.

## III.[7]

### A. The District Court's Denial of Appellant's Motion for Leave to File a Fifth Amended Answer, Counterclaim, and Third-Party Complaint

Appellant challenges the District Court's denial of his motion for leave to file an amended Answer to assert counterclaims against Baymont and a Third-Party Complaint against WHG. In particular, he challenges the dismissal of his proposed non-statutory claims of breach of contract and breach of the implied covenant of good faith and fair

---

[7] The District Court had subject matter jurisdiction under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291.

dealing against Baymont and WHG.[8]

Generally, we review the denial of leave to amend a pleading for abuse of discretion. *City of Cambridge Ret. Sys. v. Altisource Asset Mgt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "Leave to amend is properly denied if amendment would be futile, i.e., if the proposed [pleading] could not 'withstand a renewed motion to dismiss.'" *Id.* (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)). Our review of a district court's assessment of futility of a proposed amended pleading is plenary. *Id.* Here, the Court properly denied the motion to amend on the basis of futility.

In order to survive a futility challenge, a proposed amended pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

As Baymont points out, the proposed claims fail predominantly because Appellant cannot identify any provision of the Franchise Agreement that was allegedly breached by Baymont, even if Appellant's factual allegations were accepted as true. In addition, WHG is not a party to the Agreement so the claims in the proposed Third-Party Complaint fail for that reason as well. *See Nelson v. Elizabeth Bd. of Educ.*, 466 N.J.

---

[8] Appellant is not challenging the dismissal of his proposed statutory claims which included "dismissal of [his] Federal Franchise Rule, [N.J.] Franchise Practices Act and [N.J.] Consumer Fraud Act claims" against Baymont and WHG. *See* Appellant Br. 13.

Super. 325, 342 (App. Div. 2021) ("To establish a claim for breach of contract, a plaintiff must provide proof of a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and a breach causing the claimant to sutain[] damages.") (internal quotation marks omitted); *Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot.*, 447 N.J. Super. 423, 443 (App. Div. 2016) (dismissal of claim of breach of implied covenant of good faith and fair dealing appropriate where party being sued was not a party to a contract with plaintiff). Moreover, Appellant cannot show the alleged conduct was done in bad faith or with malicious motive, a required element of an implied covenant of good faith and fair dealing claim. *See Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 463 (D.N.J. 2020); *see also Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 260 (App. Div. 2002) ("The last element of a maintainable cause of action based upon the implied covenant of good faith and fair dealing is bad faith or ill motive."). Thus, the proposed claims of breach of contract and breach of an implied covenant of good faith and fair dealing were properly dismissed as futile,[9] and Appellant's motions for leave to amend and for reconsideration were properly denied.[10]

---

[9] The District Court further pointed out that, even assuming arguendo Appellant's proposed breach of contract claim was not futile, it would be barred due to undue delay because the alleged factual and legal bases for it were available to Appellant since the initiation of the lawsuit over three years before the motion. While it appears the Court properly made this finding in the alternative, we need not address it in light of the futility finding.

[10] Appellant curiously asserts that the District Court "fail[ed] to hear" a discovery request he made in a Dec. 4, 2019 letter. Appellant Br. 16. However, a transcript of a June 25, 2020 hearing in the District Court clearly reflects that Appellant suggested the Court

**B. Summary Judgment in favor of Baymont**[11]

The District Court granted Baymont's motion for summary judgment that requested liquidated damages from Defendants, damages for unpaid Recurring Fees, and relief against Appellant individually pursuant to the Guaranty. The District Court properly found the Company breached the Agreement.

On appeal, Appellant argues section 11.4 of the Agreement was ambiguous and that Baymont breached the Agreement by diverting potential or subsequent reservations upon Appellant's failure to pay Recurring Fees owed. Pursuant to section 11.4 of the Franchise Agreement, Baymont was permitted to "suspend the Facility from the Reservation System for any default or failure to pay or perform under this Agreement or any other written agreement with [Baymont] relating to the Facility, . . . discontinue reservation referrals to the Facility for the duration of such suspension, and [ ] divert previously made reservations to other Chain Facilities after giving notice of non-

_____

"hold [the letter] motion to compel in abeyance indefinitely," and the Court agreed and directed Appellant that if he wished to revisit any remaining issue following further discovery, he was to advise the Court via a subsequent letter and "[f]ollow up with [the Court] if it's – if it turns out to be an issue." D.N.J. ECF 137-1 (Tr. Hrg. 6/25/20, at 5-7).

[11] "We review the District Court's grant of summary judgment de novo," applying "the same standards and presumptions as the District Court." *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 249 (3d Cir. 2019). Under this standard, we view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020). "Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

performance, non-payment or default." App. 102. As the District Court found, there is nothing ambiguous about the Agreement expressly permitting Baymont, upon the Bernstein Company's failure to remit Recurring Fees to Baymont, to suspend the Bernstein Company from the Reservation System and "divert[ing] previously made reservations to other Chain Facilities" for any default or failure to pay. *Id.* Nor does the record reflect that Baymont expressed any false or misleading statements to guests who called the Baymont reservation line or that Baymont improperly charged the Berntein Company with a Loyalty Retraining Fee.

To the extent Appellant questions the award of liquidated damages, interest, and attorney fees because of the asserted violation of the Agreement by Baymont, the District Court correctly found the Agreement's terms unambiguous, and accordingly, the Court's award was proper as part of its grant of summary judgment. Appellant also challenges the accounting and calculation of liquidated damages because of alleged vagueness of the Agreement. New Jersey courts have noted the "presumptive reasonableness" of liquidated damages provisions in commercial contracts and burden the party challenging the clause with "overcom[ing] the presumptive reasonableness" of the challenged provision. *MetLife Cap. Fin. Corp. v. Wash. Ave. Assocs. L.P.*, 732 A.2d 493, 500 (N.J. 1999). Here, after reviewing sections 12.1 and 18.1 of the Agreement and the applicable case law on liquidated damages provisions, the District Court properly found the Agreement's liquidated damages provisions were reasonable. The Court did not err when it agreed with Baymont's calculation of liquidated damages of $26,971.62, based on the Recurring Fees generated at the Facility during the prior year preceding the Agreement's

11

termination. The Court further properly agreed with the reasonable interest calculation of $22,663.20, resulting in a total liquidated damages award of $49,634.82.

Appellant argues the District Court misinterpreted his deposition testimony in finding that Defendants essentially admitted to their breach. However, Appellant conceded in his Answers to Interrogatories that he failed to pay what was owed because of the Bernstein Company's "relationship with its bank and its inability to obtain financing[,] . . . [and] more pressing bills for payroll, mortgage, taxes, utilities, food and the like." App. 203. Appellant's deposition testimony similarly conceded that the Bernstein Company had "fallen behind" on paying Baymont the Recurring Fees due to "other pressing bills," including payroll, utilities, and "other creditors that were more threatening at the time than Baymont." App. 355. Appellant also explained that the termination of the Agreement was triggered when "the hotel was essentially foreclosed upon by the bank" and the Bernstein Company "execute[d] a quit claim bill of sale in connection with that foreclosure." App. 342 (Bernstein Dep. at 25:16-25, 26:1-2). On appeal, Appellant does not dispute that he failed to pay Baymont pursuant to the terms of the Agreement. His various accusations made in conclusory fashion blaming Baymont for also contributing to his non-payment do not serve to excuse his breach. As the District Court found, the undisputed facts amount to a clear breach of the Agreement and the Guaranty by Appellant, and the Court correctly held that Baymont demonstrated its entitlement to summary judgment on its liquidated damages and Recurring Fees claims.

The District Court properly rejected Appellant's attempt to cast unsupported affirmative defenses as genuine diputes of material fact, and properly concluded that they

12

lacked merit.  As explained, upon Appellant's failure to pay in violation of the

Agreement, Baymont properly suspended the Reservation System.  The record does not

support Appellant's assertion that Baymont tortiously interfered with the Bernstein

Company, committed fraud in the inducement, or overbilled for a Loyalty Program Fee.[12]

Appellant also argues the District Court should have allowed a deposition of

Baymont's affiant, Kendra Mallet, Vice President of Global Franchise Administration,

pursuant to Federal Rule of Civil Procedure 56(d).  Under that Rule, a court may allow

additional time to take discovery when a litigant "shows . . . that, for specified reasons,

[he] cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  Here,

Appellant's request for the additional discovery included conclusory assertions and

speculation that Ms. Mallet lacked relevant personal knowledge, despite her sworn

statements in her affidavit.  We perceive no abuse of discretion in the District Court's

denial of the discovery request where Appellant failed to make the necessary showing in

---

[12] "Under New Jersey law, the economic loss doctrine defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) (internal quotation omitted).  Appellant did not raise his economic loss doctrine challenge in the District Court.  It is thus forfeited, and we find no "extraordinary circumstances" to address it. *See United States v. Dowdell*, 70 F.4th 134, 140 (3d Cir. 2023) (internal quotation marks omitted); *see also Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").  Moreover, "as a matter of law, the economic loss doctrine does not apply to claims asserting breach of the implied covenant of good faith and fair dealing." *Red Hawk Fire & Sec.*, 449 F. Supp. 3d at 463.  Here, the doctrine does not apply because the challenged conduct was directly related to and premised on the express terms of the Franchise Agreement.  In any event, as explained above, Baymont's suspension of the Reservation System was fully in accordance with the Agreement.

support thereof under Rule 56(d). Nor has Appellant shown the actual and substantial prejudice necessary for relief on that issue. *See, e.g., Crosbie v. Highmark Inc.*, 47 F.4th 140, 146 (3d Cir 2022).

For the foregoing reasons, we affirm the Judgment and Orders of the District Court.